Bergan, J.
In the early morning of December 31, 1961, Mr. and Mrs. John Mosler, stopping their car in front of 1035 Fifth Avenue where they lived, were accosted by two armed men who at gunpoint entered the car, one of them taking over the control of the ear and the other getting in back.
On the trial it was established that John Richlia, who was a People’s witness, was the driver of the car and defendant D ’Antonio was the other active participant; there is proof also that defendants Levy and Maloney planned the crime in concert with the actual perpetrators.
Richlia drove the car north on Fifth Avenue to 88th Street, then east to Park Avenue, then south on Park Avenue to 81st Street, then west to Fifth Avenue, then north past the Mosler house and again east on 88th Street to First Avenue where the *163 robbers got out of the car. The total length of the drive was 27 city blocks; the time 20 minutes.
While this trip was under way, earrings and two finger rings were taken from Mrs. Mosler. The earrings were taken while the ear was going the first time north on Fifth Avenue and the finger rings while it was turning into 88th Street. The robbery seems to have continued, as far as Mrs. Mosler was concerned, at least, in trying to find other jewelry on her person until after the car made its second turn into 88th Street.
At a later point, but at a time not clearly described, Mr. Mosler was robbed of $300 in cash. It is evident, however, that the taking of Mr. Mosler’s money was after Mrs. Hosier's jewelry had been taken, and it seems a fair inference from his description of the sequence of events that it was while the car was approaching First Avenue on the second trip eastward on 88th Street.
The attempt to get more jewels from Mrs. Mosler thus continued into the second movement east in 88th Street and the sequence of narration suggests that Mr. Mosler was robbed while the car was proceeding between Fifth and First Avenues. This was, according to the narrative of Mr. Mosler, ‘ Prior to reaching ” the corner of “ 88th Street and First Avenue ”. His narrative continued: ‘ ‘ Let me see if I can remember the exact point * * * T don’t know the exact time or not, but at a point in the route of the car, the trip of the car, I had a ring of sentimental value, and a watch of sentimental value, which I didn’t want to give to the gunmen, if possible. I, however, reached into my pocket and I withdrew my wallet and I handed it to him and said, ‘ Here’s my wallet,’ and he took my wallet.”
These three defendants were each convicted of two counts of kidnapping, of two counts of robbery first degree and of criminally possessing a pistol. On the kidnapping charges each was sentenced to 20 years to life; for the robbery, Levy was sentenced to 15 to 30 years; D’Antonio, 15 to 25 years; and Maloney from 10 to 11 years; for the gun charges all received suspended sentences. The prison sentences run concurrently. The Appellate Division unanimously affirmed the judgments.
Kidnapping is, by contemporary statutory standards, one of the most serious of crimes. In our era this crime has assumed particularly reprehensible forms. It may under some circum *164 stances be punishable by death (Penal Law, § 1250, subd. A, par. 3, as amd. by L. 1963, eh. 994, § 3). The minimum penal sentence is 20 years to life, as compared with rape in the first degree which entails a maximum punishment of 20 years (Penal Law, § 2010, subd. 5) and robbery first degree which entails a maximum punishment of 30 years (Penal Law, § 2125).
In basic concept the crime of kidnapping envisages the asportation of a person under restraint and compulsion. Usually the complete control of the person and the secrecy of his location are means of facilitating extortion. But since the control may be accomplished in a variety of ways, the New York statute has been drafted in very broad terms. Much of the definition related to traditional forms of kidnapping, but literally embraced in its terms any restraint. It provided, e.g., that one who “ confines ” another with intent to “cause him * * * to be confined” against his will is guilty of kidnapping (Penal Law, § 1250, former subd. 1).
This definition could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place.
It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words.
The problem in relation to rape and assault was considered by the court in People v. Florio (301 N. Y. 46). A girl was enticed into an automobile and forcibly detained and driven from Manhattan to an isolated place in Queens where she was raped. Convictions for kidnapping as well as for rape and assault were sustained.
We now overrule People v. Florio (supra) to limit the application of the kidnapping statute to ‘ ‘ kidnapping ’ ’ in the con- *165 volitional sense in which that term has now come to have acquired meaning. There may well be situations in which actual kidnapping in this sense can be established in conjunction with other crimes where there has been a confinement or restraint amounting to kidnapping to consummate the other crime. But the case now before us is essentially robbery and not kidnapping.
The precise situation in which both kidnapping and other crimes such as robbery or rape are sustainable together is reserved until an appropriate case arises. People v. Black (18 A D 2d 719) is an illustration of separately established crimes of robbery and kidnapping. One of the victims of the robbery was taken along as a hostage to another State and held for a considerable time, long after the robbery had been completed.
In the case before us the movement of the automobile, which was itself the situs of the robbery, was not essentially different in relation to the robbery than would be the tying up of a victim in a bank and his movement into another room. In essence the crime remained a robbery although some of the kidnapping statutory language might literally also apply to it.
The main decisions relied upon in support of the kidnapping conviction do not come up to the problem before us. People v. Hope (257 N. Y. 147) considered a real kidnapping and did not involve contemporaneous robbery, which is the critical point in the present case. People v. Black (supra), as we have noted, involved clearly separate crimes of robbery and kidnapping.
In People v. Small (249 App. Div. 863, affd. 274 N. Y. 551) the interrupted acts of seizure of the victims, as far as they went, suggested kidnapping and no purpose to rob was established, Although the Federal Kidnapping Act, (U. S. Code, tit. 18, ch. 55, §§ 1201- 1202) differs from ours in text, it, too, is broadly drafted and the Supreme Court in Chatwin v. United States (326 U. S. 455) took precautions to see that its application was limited to acts which were in the nature of true kidnapping.
This separation of essentially separate crimes is consistent with the general trend of professional comment and analysis of kidnapping statutes which could be read to include acts which are integral to other crimes and are not essentially kidnapping. (See, e.g., A Rationale of the Law of Kidnapping, 53 Col. L. Rev. 540, n. 20; Judicial Construction of Kidnapping Statutes, 15 Albany L. Rev. 65; Room-to-Room Movement: A Risk Ration *166 ale for Aggravated Kidnaping, 11 Stan. L. Rev. 554; Kidnaping and the Element of Asportation, Note 35 So. Calif. L. Rev. 212; Note 110 U. of Pa. L. Rev. 293.)
Appellant Levy also contends that the latitude given the prosecutor in questioning Daniel Cohen, a reluctant witness called only against Levy, severely prejudiced this appellant, and the other defendants join him, arguing an adverse effect on them. Cohen had given the District Attorney a sworn statement implicating Levy in the possession of guns. On the stand he refused on the ground of self incrimination to testify to the facts of this statement. The prosecutor asked over 150 questions, reading from the statement. Many of the questions thus read and not answered were, in that state of the record, prejudicial.
Had Cohen not later answered the. questions, a reversal of any resulting judgment against Levy would be indicated. Extended examination of a prosecution witness who, it is known in advance by the prosecutor will claim privilege or after it becomes clear he will claim it, is prejudicial. (See, e.g., United States v. Maloney, 262 F. 2d 535; United States v. Tucker, 267 F. 2d 212; Washburn v. State, 164 Tex. Cr. Rep. 448; DeGesualdo v. People, 147 Col. 426.)
But, as the People argue, Cohen was recalled and his testimony covered substantially ¿11 matters stated in the prior questions, and, although Levy argues that Cohen on recall answered “ some questions ’ ’, he does not demonstrate a prejudicial differential between those asked and not answered and those asked and later answered.
It can bo argued both ways what the effect of this kind of trial strategy is. A jury might well look with suspicion on the testimony of a witness who refuses to answer and then does answer questions: Levy argues it the other way, that ‘1 the jury with the explosive events of the Cohen interrogation fresh in their minds could only be expected to give his later testimony much greater weight and consideration than it deserved.” This does not necessarily follow. The Judge gave the jury immediate and specific instructions to disregard the unanswered questions.
The questions having been answered, and due precautionary instructions having been given by the Judge concerning the prior unanswered form of the questions, error requiring reversal on *167 this ground is not demonstrated. Other grounds discussed by appellants do not require analysis.
The judgments should be modified by reversing the conviction of each defendant for kidnapping and dismissing the kidnapping counts of the indictment and, as so modified, affirmed.