**UNITED STATES of America ex rel. Louis D'ANTONIO, Relator,**

v.

**Hon. Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, New York, Respondent.**

**No. 66 Civ. 2456.**

United States District Court
S. D. New York.

March 20, 1969.

Theodore Krieger, New York City, for relator.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for respondent; Mortimer Sattler, Asst. Atty. Gen., of counsel.

EDWARD WEINFELD, District Judge.

Petitioner's application for a writ of habeas corpus is now before this Court on remand by the Court of Appeals, which held that petitioner, having exhausted in the state courts one claim of violation of his federal constitutional rights, was entitled to have it considered on the merits, even though he asserted other but unrelated constitutional claims

as to which an available state remedy had not been exhausted.[1]

Petitioner is currently serving a fifteen to twenty-five year sentence at a state prison following his conviction after a trial to a jury on a charge of robbery in the first degree and felonious possession of a pistol.[2] Petitioner alleges he was denied due process when the state called Daniel Cohen as a prosecution witness, knowing that he would assert his privilege against self-incrimination before the jury, and later coerced him into testifying. Upon a review of the entire record the Court finds that petitioner was not denied due process.

The issue with respect to Cohen's testimony arose as follows: Petitioner and two codefendants, Levy and Maloney, were on trial for the kidnapping and robbery of Mr. and Mrs. John Mosler. The defendants were also charged with criminally possessing two pistols on the day of the holdup. Cohen, in exchange

for immunity from prosecution in New York County as an accessory after the fact, had already confessed to his role in the scheme—disposing of the guns used in the holdup. When Cohen confessed, he was under indictment in the Bronx County Supreme Court on a gun possession charge, related to the Mosler affair, and other unrelated charges were pending against him in Queens County. When Cohen agreed to cooperate and to testify upon the trial of petitioner and his codefendants, he was advised that the New York County prosecutor could give him no immunity on the Bronx charge—that immunity applied only to the New York County charge, as an accessory after the fact for disposal of the guns. detailing his part in the crime and im- Cohen signed and swore to a statement, plicating Levy. Cohen acknowledged that the confession was voluntary and that the only promise made to him was that his cooperation would be brought

1. United States ex rel. Levy v. McMann, 394 F.2d 402 (2d Cir. 1968). In December, 1965, petitioner applied to this Court for a writ of habeas corpus on three grounds: (1) that he had been denied due process of law when the state called Daniel Cohen as a witness at his trial, knowing Cohen would claim his privilege against self-incrimination, and then read to the jury answers from his alleged confession; (2) that he had been denied a constitutional jury trial; and (3) that the conduct of the court and prosecution had denied him a fair trial. Since it appeared that petitioner had not exhausted available state remedies with respect to grounds (2) and (3), his petition was dismissed. United States ex rel. D'Antonio v. Follette, 66 Civ. 51 (S.D. N.Y. June 28, 1966).

In August, 1966, petitioner filed a second petition in which he relied only upon the exhausted ground for relief, that is, (1) the alleged denial of due process because of Cohen's testimony. This Court, relying upon the principle that "nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation," Sanders v. United States, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), dismissed the petition on the ground that the petitioner, "by fragmentizing claims heretofore presented, seeks to circumvent

the requirement of exhaustion of available state remedies." United States ex rel. D'Antonio v. Follette, 66 Civ. 2456 (S.D.N.Y. Sept. 22, 1966). The Court of Appeals, while it "recognize[d] the dilemma presented to a district judge in situations where a petition includes both exhausted and unexhausted claims," held: "However, where the unexhausted claims are either unrelated to the principal exhausted claim or frivolous, the desirability of including all grounds for habeas corpus in a single petition does not outweigh the interests of a prisoner in obtaining prompt federal consideration of exhausted claims." United States ex rel. Levy v. McMann, supra, 394 F.2d at 404–405.

2. The sentence on the pistol charge was suspended. The New York Court of Appeals vacated a concurrent twenty-year to life sentence for kidnapping on the ground that the facts proved at trial made out only a temporary detention and asportation incidental to the robbery. People v. Levy, 15 N.Y.2d 159, 256 N.Y. S.2d 793, 204 N.E.2d 842 (1965), aff'g in part, rev'g in part 20 A.D.2d 518, 244 N.Y.S.2d 497 (1st Dep't 1963). The Supreme Court denied certiorari. Levy v. New York, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965); D'Antonio v. New York, 382 U.S. 865, 86 S.Ct. 131, 15 L.Ed.2d 103 (1965).

to the attention of the Bronx and Queens County prosecutors.

Cohen, called as a prosecution witness, gave his name, address, marital and family status. In the presence, but out of the hearing, of the jury, he informed the court that he had been advised by his attorney to refuse to answer questions on the ground of self-incrimination on the Bronx charge. Thereupon the jury was excused. The court, after Cohen acknowledged the validity of the question and answer statement, held he had voluntarily waived his privilege against self-incrimination, reiterated the immunity grant as to the New York County charge, and ruled that immunity did not extend to the Bronx charge. Cohen was directed to answer or face contempt charges; also he was declared a hostile witness. The jury returned to the courtroom and Cohn was asked whether he had not given the specific answers to the questions put to him as contained in his statement. Cohen refused to answer on constitutional grounds.

The gist of Cohen's prior statement, as read in the presence of the jury in an attempt to refresh his recollection, was that Levy had called him at home to report that Richlia (who had pled guilty before trial) had been arrested and to ask Cohen to pick up a package at the apartment of Levy's girlfriend, Karen; that Karen gave Cohen a cardboard box containing two .45 and two .32 calibre automatics; that Cohen hid them in his house in the Bronx; that later the same night, Levy called Cohen again, met him near Levy's apartment house, confessed that he was in trouble in the Mosler affair and gave Cohen a briefcase containing two more .45's; that Cohen hid all the guns in his mother's house in upstate New York and eventually turned them over to one Alex Procho. The statement contained no reference to or mention of petitioner, D'Antonio. At the conclusion of the reading of the questions and answers, and out of the presence of the jury, the

court held Cohen in bail on a contempt charge.

At the afternoon session Cohen resumed the stand and out of the presence of the jury the court expanded its earlier ruling with respect to the scope of Cohen's immunity. He was assured that his testimony upon the trial could not be used against him in any court of the state, including Bronx County. A recess was declared to permit Cohen to confer with former counsel, following which counsel, in Cohen's presence, informed the court that Cohen had been advised of his legal obligation to testify under penalty of contempt for refusal. Cohen still refused to testify. He asserted that during the recess, and while in the witness room, he had been beaten by an unnamed policeman. The jury was brought in and after Cohen refused to answer several questions he was excused. The court thereupon issued an admonitory instruction to the jury, in part as follows:

"All of the questions asked by the District Attorney which were not answered by the witness are to be disregarded by you as having no significance and being of no probative value, and I instruct you and admonish you that they are not evidence in the case to be considered in any way, shape or manner or form. Any of the questions that the District Attorney may have asked which elicited no answer from the witness, or which resulted in a refusal to answer by the witness, are not evidence. You are to draw no inference therefrom; you are not to surmise what the answer might have been, and you are to disregard them and strike them from your minds as much as you possibly can, and as far as humanly possible for you to do so, and you are to decide this case on that evidence which remains in the case."

All defendants moved for a mistrial on the ground they had been deprived of the right to a fair trial by reason of the reading of Cohen's answers as contained in the statement, and urged that

the court's instructions could not overcome its prejudicial effect. The motions were denied.

The next morning, Cohen, after conferring with another attorney, resumed the stand and voluntarily answered all questions, which paralleled those he had previously refused to answer. He was cross-examined by all three defendants, in the course of which he recanted his charge on the previous day that he had been threatened and beaten. Cross-examination by petitioner's counsel indicated lack of any prior relationship between D'Antonio and Cohen. At the conclusion of Cohen's testimony, direct and cross-examination, his answers had all but covered the very matters contained in the statement which the prosecutor had read to the jury the preceding day.

On direct appeal in the state courts, the Appellate Division did not discuss Cohen's first appearance,[3] but the Court of Appeals conceded that if Cohen had not returned to testify voluntarily, "a reversal of any resulting judgment against Levy would be indicated."[4] However, noting that the voluntary testimony "covered substantially all matters stated in the prior questions" and that Levy had not demonstrated a "prejudicial differential between [the questions] * * * asked and not answered and those asked and later answered," the court held that, the questions having been answered and the jury having been given immediate and specific instructions to disregard the the unanswered questions, the defendant's right to a fair trial had not been violated.[5]

The New York Court of Appeals did not refer specifically to petitioner on this aspect of the matter. However, the original unanswered questions, as well as Cohen's subsequent voluntary answers, which implicated only Levy, necessarily affected petitioner, since he was charged as an aider and abettor, as to which the court instructed the jury. Accordingly, D'Antonio's position is here deemed no less than Levy's with respect to Cohen's appearance before the jury. Even so, petitioner's claim cannot be sustained.

At the outset it is important to note that petitioner's contentions do not involve the right to confrontation of the witness.[6] Defense counsel had the opportunity—and amply exercised it—to cross-examine Cohen after he voluntarily testified on the second day. Petitioner and his codefendants fully availed themselves of the "opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."[7] This alone might suffice to dispose of petitioner's objections.[8]

Also of significant importance is the fact that Cohen was called by the prosecution to the stand in the justified, but as it developed mistaken, belief that he would testify in accordance with his sworn promise to do so. Moreover, he had been granted immunity and there was no valid basis for his plea of self-incrimination. This is not a case where the prosecution, aware that a witness will assert his privilege upon valid grounds, nonetheless deliberately calls him to gain the benefit of such unfavor-

3. People v. Levy, 20 A.D.2d 518, 244 N. Y.S.2d 497 (1st Dep't 1963).

4. People v. Levy, 15 N.Y.2d 159, 166, 256 N.Y.S.2d 793, 797, 204 N.E.2d 842, 845 (1965).

5. Id. at 166–167, 256 N.Y.S.2d at 797–798, 204 N.E.2d at 845.

6. Cf. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ; Douglas v. Alabama, 380 U.S.

415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) ; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

7. Mattox v. United States, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

8. Cf. United States v. Aiken, 373 F.2d 294, 298 (2d Cir.), cert. denied, 389 U. S. 833, 88 S.Ct. 32, 19 L.Ed.2d 93 (1967).

able inferences that a jury may draw from the witness' assertion of the testimonial privilege.

Petitioner's case is governed by the standards set forth in Namet v. United States.[9] Although that case involved only claims of evidentiary trial errors, its principles apply equally to claims of constitutional dimension. There the court recognized two theories on which the presentation of inculpatory material in the course of refreshing the recollection of a reluctant witness may be held to be of prejudicial content: first, in a case of "prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege"; [10] and second, where "in the circumstances of a given case, inferences from a witness' refusal to answer . . . critical weight to the prosecution's case in a form not subject to cross-examination * * *." [11]

Applying these guidelines, there was neither prosecutorial misconduct nor unfair prejudice. As to the first, and as already noted, the prosecution, taken by surprise by Cohen's refusal to testify despite his sworn statement that he would, and having in its possession his confession, which he acknowledged was freely and voluntarily made, plus the grant of immunity which was reaffirmed by the court, was entitled to have his testimony presented to the jury. The prosecution was not required to yield to the groundless assertion of the testimonial privilege,[12] and it could reasonably, in good faith, have expected the court to order Cohen to testify.[13] This was especially so since Cohen continued to ask for the assistance of counsel, thereby indicating he might be disposed upon legal advice to change his mind.[14] Moreover, Cohen, having reversed his previous position of cooperation to the prosecution's surprise, it was entitled to interrogate him as a hostile witness.[15] Had the prosecution failed to call Cohen, the defense could have urged that its failure showed he would not have corroborated its other testimony on this subject.[16]

Nor does the second test set forth in *Namet* require petitioner's release. First, there is no basis for any claim that the reading of the question and answer statement gave critical support to the prosecution's case. Any likelihood that the jury would draw impermissible inferences because of lack of cross-examination evaporated when Cohen testi-

9. 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed. 2d 278 (1963).

10. *Id.* at 186, 83 S.Ct at 1154.

11. *Id.* at 187, 83 S.Ct. at 1155.

12. Namet v. United States, 373 U.S. 179, 188, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

13. United States v. Edwards, 366 F.2d 853, 870 (2d Cir. 1966), cert. denied sub nom. Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967), Parness v. United States, 386 U.S. 919, 87 S.Ct. 882, 17 L.Ed.2d 790 (1967); *cf.* United States v. Tucker, 267 F.2d 212, 215 (3d Cir. 1959) (dictum); United States v. Maloney, 262 F.2d 535 (2d Cir. 1959); United States v. Hiss, 185 F.2d 822, 832 (2d Cir. 1950), cert. denied, 340 U.S. 948, 71 S.Ct. 532, 95 L. Ed. 683 (1951); United States v. 5 Cases, More or Less, etc., 179 F.2d 519, 523 (2d Cir.) (dictum), cert. denied, 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372 (1950).

14. Weinbaum v. United States, 184 F.2d 330 (9th Cir. 1950).

15. United States v. Kahaner, 317 F.2d 459, 474 (2d Cir.), cert. denied sub nom. Corallo v. United States, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963), Keogh v. United States, 375 U.S. 836, 84 S.Ct. 73, 11 L.Ed.2d 65 (1963); United States v. Murray, 297 F.2d 812, 816 (2d Cir.), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); United States v. Allied Stevedoring Corp., 241 F.2d 925, 932–933 (2d Cir.), cert. denied, 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143 (1957); Di Carlo v. United States, 6 F.2d 364, 367–368 (2d Cir.), cert. denied, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925).

16. United States v. Gernie, 252 F.2d 664, 669 (2d Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958).

fied. Whatever inferences were warranted, and however Cohen's credibility was to be evaluated, rested upon his testimony, direct and cross-examination —which indeed was vigorous and exposed his criminal record and activities. It was upon Cohen's "face to face" appearance with the jury that it decided whether to accept or reject his testimony. It had his testimony; there was no occasion for inferences by reason of lack of cross-examination.[17] Any impression upon jurors that might have resulted from Cohen's claims of his testimonial privilege was dissipated by his abandonment of the privilege, his testimony and his full exposure to cross-examination.[18] Moreover, the trial court's cautionary instruction, delivered immediately upon the close of the reading of the questions and answers from the earlier statement, in the circumstances here presented, cured any prejudicial error that might have existed prior thereto.[19] It should be observed that the question and answer incident, viewed against the totality of evidence in a long trial, which concerned itself almost entirely with the more serious crimes of kidnapping and robbery, was far from crucial to the state's case. Cohen's testimony merely related to the disposal of the guns. There was independent direct and powerful evidence to support the prosecution's case on all charges. Eyewitness testimony as to petitioner's role in the holdup was given by the victim and Richlia, an accomplice.

The record repels any claim that Cohen's original refusal to answer added critical weight to the prosecution's case.[20]

Finally, there is no substance to petitioner's claim that Cohen's "voluntary" testimony on the second appearance was in fact coerced. Apart from the question whether petitioner has standing to raise such an objection,[21] Cohen himself withdrew the charge under cross-examination by counsel for one of petitioner's codefendants.

The petition is dismissed.

17. Namet v. United States, 373 U.S. 179, 189, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); United States v. Aiken, 373 F.2d 294, 298 (2d Cir.), cert. denied, 389 U.S. 833, 88 S.Ct. 32, 19 L.Ed.2d 93 (1967).

18. Cf. Namet v. United States, 373 U.S. 179, 189, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). Compare Fletcher v. United States, 118 U.S.App.D.C. 137, 332 F.2d 724 (1964).

19. Namet v. United States, 373 U.S. 179, 187, 190, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); United States v. Edwards, 366 F.2d 853, 870 (2d Cir. 1966). cert. denied sub nom. Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967); United States ex rel. Smith

v. Reincke, 354 F.2d 418, 420 (2d Cir. 1965), cert. denied, 384 U.S. 993, 86 S.Ct. 1896, 16 L.Ed.2d 1010 (1966); United States v. Maloney, 262 F.2d 535, 538 (2d Cir. 1959); United States v. Gernie, 252 F.2d 664, 670 (2d Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958).

20. Namet v. United States, 373 U.S. 179, 189, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

21. See, e.g., Bowman v. United States, 350 F.2d 913, 916 (9th Cir. 1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966); Morgan v. Halberstadt, 60 F. 592, 596–597 (2d Cir.), cert. denied, 154 U.S. 511, 14 S.Ct. 1149, 38 L.Ed. 1078 (1894).