Charles HINES, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–99–00515–CR.

Court of Appeals of Texas,
Houston(14th Dist.).

March 1, 2001.

R.P. Cornelius, Houston, TX, for appellants.

Dan McCrory, Houston, TX, for appellees.

Panel consists of Justices WITTIG, BAIRD, and Senior Chief Justice MURPHY.*

## OPINION

BAIRD, Justice (Assigned).

Appellant was charged by indictment with the offense of aggravated kidnaping. TEX. PEN.CODE ANN. § 20.04. A jury convicted appellant of the charged offense and assessed punishment at 27 years confinement in the Texas Department of Criminal

* Senior Chief Justice Murphy and Former Judge Charles F. Baird sitting by assignment.

Justice—Institutional Division. The first point of error contends the evidence is legally insufficient to support the jury's verdict. We agree and, therefore, reverse and order an acquittal.

## I. Factual Summary.

■ When resolving a legal sufficiency challenge, we view the evidence in the light most favorable to the prosecution. *Jackson v.. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979). In that light, the record evidence reveals the following.

On the alleged date, the complainant, a teller at the Klein Bank in Harris County, arrived to open the bank for the day's business. Upon reaching the front door, appellant and another male emerged from some nearby shrubs and instructed the complainant to unlock the door. Both men were dressed in black, and wore ski masks and gloves; one of them carried a shotgun. The complainant quickly entered the bank and attempted to lock the men outside. However, the gunman stuck the barrel of a shotgun between the doors, pried the door open and grabbed the complainant by the throat. The gunman asked the complainant where the alarm pad was located. The gunman and the complainant proceeded to the pad. The gunman instructed the complainant to disable the alarm. When the complainant had difficulty performing that task due to nervousness, the gunman threatened to shoot the complainant. As this occurred, the other male stood lookout.

After successfully disabling the alarm, the gunman instructed the complainant to proceed to the vault. After arriving at the vault, the complainant moved to turn on the light. At that time, she saw the other morning teller, Darlene Standlee, arriving for work. The men squatted down and held the complainant by the arm and instructed her to signal Standlee to enter the bank. Instead, the complainant mouthed to Standlee to not enter and Standlee began to run. Upon seeing Standlee flee, both men left the bank in pursuit. After the men departed, the complainant left the bank and contacted the police. The complainant testified that while in the bank, she was not free to leave and that her presence in the bank was neither consensual nor voluntary.

Standlee testified that upon her arrival the complainant was already inside the bank. As Standlee approached, she saw the complainant and an individual who was completely covered. As the complainant attempted to communicate with Standlee, Standlee saw the individual grab the complainant and pull her back. Standlee then began to run. Standlee stopped when instructed to do so and both men escorted Standlee into the bank. The three proceeded to the vault. Eventually the men fled the bank with approximately $33,000.[1]

Shane McCoy, a detective with the Harris County Sheriff's Office assigned to the

---

**1.** Appellant was subsequently charged with the aggravated robbery of Standlee. That case was tried along with the instant case and appellant was convicted of that offense. That conviction is the subject of a separate appeal not relevant to the disposition of the issue presented here.

Although we cannot be certain, we assume appellant was charged with aggravated kidnaping rather than aggravated robbery in the instant case because there was only one theft.

At the time of the indictment in this case, our law prohibited two robbery prosecutions from a single theft. *See Ex parte Crosby,* 703 S.W.2d 683 (Tex.Crim.App.1986). Therefore, at the time of this trial, appellant could not have been successfully prosecuted for the aggravated robbery of both the complainant and Standlee. However, *Crosby* has been subsequently overruled. *See Ex parte Hawkins,* 6 S.W.3d 554 (Tex.Crim.App.1999).

bank robbery task force, was dispatched to the Klein Bank on the date of the robbery. Following that investigation, McCoy received tips from two confidential informants that implicated appellant. McCoy secured and executed a warrant for appellant's arrest. Following the arrest, appellant gave a statement admitting his participation in the robbery as the non-gunman. The statement is sparse in recounting the conduct related to the alleged kidnaping. In pertinent part, it relates:

> [The complainant] drove up in a white car and parked in front of the bank, and walked towards the front door. [The gunman] and I then went up to [the complainant] and after she saw us she panicked and ran into the bank. We then followed her inside and forced her into the back of the bank where the vault was.

## II. The Allegation and Statutory Elements.

The indictment alleged the offense of aggravated kidnaping as follows:

> [Appellant], heretofore on or about JUNE 29, 1998, did then and there unlawfully, intentionally and knowingly abduct [the complainant], ..., without [her] consent, and did restrain [the complainant] with intent to prevent [her] liberation, to-wit by using and threatening to use deadly force, namely shoot the Complainant with a firearm, on the Complainant.

Aggravated kidnaping is prescribed by section 20.04 of the penal code. As alleged in the instant case, an offense is committed if the actor intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense. TEX. PEN.CODE ANN. § 20.04(b). Abduct, as pled in the indictment, means "to restrain a person with intent to prevent [her] liberation by using or threatening to use deadly force." TEX. PEN.CODE ANN. § 20.01(2)(B). In relation to the instant case, restrain means to restrict a person's movement by force, intimidation, or deception, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her. TEX. PEN.CODE ANN. § 20.01(1)(A).[2]

## III. Analysis.

■ In resolving a sufficiency challenge, we ask whether any rational trier of fact could find the essential elements of the

---

2. Texas Penal Code section 20.01 provides the following definitions:

(1) *"Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. Restraint is "without consent" if it is accomplished by:*
(A) *force, intimidation, or deception;* or
(B) any means, including acquiescence of the victim, if:
(i) the victim is a child who is less than 14 years of age or an incompetent person and the parent, guardian, or person or institution acting in loco parentis has not acquiesced in the movement or confinement; or

(ii) the victim is a child who is 14 years of age or older and younger than 17 years of age, the victim is taken outside of the state and outside a 120–mile radius from the victim's residence, and the parent, guardian, or person or institution acting in loco parentis has not acquiesced in the movement.
(2) *"Abduct" means to restrain a person with intent to prevent his liberation by:*
(A) secreting or holding him in a place where he is not likely to be found; or
(B) *using or threatening to use deadly force.*
(3) "Relative" means a parent or stepparent, ancestor, sibling, or uncle or aunt, including an adoptive relative of the same degree through marriage or adoption.
The jury charge included only the italicized definitions.

crime as alleged beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2788–2789. Appellant argues the evidence is insufficient to establish the essential element of abduction. The operative word in the definition of "abduct" is "restrain." *See* Tex. Pen. Code Ann. § 20.01(2). Therefore, resolution of this point of error turns upon the meaning of restraint. *See* Tex. Pen.Code Ann. § 20.01(1). Decisional authority from the Court of Criminal Appeals and state appellate courts have not defined the scope of restraint. In *Rogers v. State,* 687 S.W.2d 337, 342 (Tex.Crim.App.1985), the Court of Criminal Appeals held there was no minimum requirement for restraint other than the interference with the person's liberty be substantial. Therefore, to resolve this point of error we must determine the level of conduct necessary to constitute substantial interference.

While our case law has never defined substantial interference, several cases have addressed factual situations in which interference was found to be substantial. For example, where a defendant has taken and transported a complainant in a vehicle may constitute substantial interference. *See Fann v. State,* 696 S.W.2d 575 (Tex.Crim. App.1985) (forcible removal of complainants to car and driving them around city); *Sanders v. State,* 605 S.W.2d 612, 613–614 (Tex.Crim.App.1980) (defendant stole an automobile with a young boy inside and drove around for hour before apprehension); *Phillips v. State,* 597 S.W.2d 929 (Tex.Crim.App.1980) (defendant gave two hitchhikers a ride, and before releasing them, held them at gunpoint and forced them to perform a sex act); *Gaffney v. State,* 937 S.W.2d 540, 542–543 (Tex. App.—Texarkana 1996, pet. ref'd) (after accepting ride with the complainant, defendant said he had a pistol and made complainant drive around for 45 minutes before finally robbing him); *Polk v. State,*

865 S.W.2d 627, 629 (Tex.App.—Fort Worth 1993, pet. ref'd) (defendant grabbed the complainant at gun point, placed her in car and drove away); *Linder v. State,* 734 S.W.2d 168, 172 (Tex.App.—Waco 1987, pet. ref'd) (bail bondsman pulling shot gun on the complainant, handcuffing him, placing him in car and transporting him to sheriff's office). *See also Mahaffey v. State,* 833 S.W.2d 678, 679 (Tex.App.— Fort Worth 1992, no pet.); *Wiley v. State,* 820 S.W.2d 401, 407–09 (Tex.App.—Beaumont 1991, no pet.); *Arevalo v. State,* 749 S.W.2d 271, 275–76 (Tex.App.—San Antonio 1988, pet. ref'd).

■ These cases, however, have not squarely addressed the meaning of substantial interference and none examined the scope of the kidnaping statute. *See Phillips v. State,* 597 S.W.2d 929, 936 (Tex. Crim.App.1980) (to commit aggravated kidnaping, one must have committed kidnaping). When interpreting a statute, appellate courts should look first to its plain language. *See Boykin v. State,* 818 S.W.2d 782, 785–786 (Tex.Crim.App.1991). When the statutory language is ambiguous, we may consider extra-textual factors to determine legislative intent. *See ibid.* The plain language of section 20.01(1)(A) makes clear that simple restraint is insufficient to constitute kidnaping, but is nevertheless ambiguous regarding what constitutes substantial interference. We will, therefore, resort to extra-textual factors to resolve the ambiguity.

The Texas Legislature adopted the 1974 Penal Code following an extensive revision process by the State Bar Revision Committee spanning several years and multiple drafts. *See* Acts 1973, 63rd Leg. ch. 399 § 1, p. 883 (effective Sept. 1, 1974). We may, therefore, consider the drafts and commentaries by the Revision Committee, as well as the materials the Revision Com-

mittee relied upon, in our attempt to discern the meaning of substantial interference. Also, because much of the Texas Penal Code is adopted from the Model Penal Code it is appropriate to examine the interpretation the Model Penal Code gives to the offense of kidnaping. *See* William G. Reid, Research Guides and General Drafting Principles, State Bar Committee on Revision of Penal Code, p. 1–2 (August 10, 1967) (Model Penal Code considered organizational starting point and initial source for revisions of the Texas Penal Code).

■ When interpreting a uniform act which has been included within a state statute, we attempt "to give effect to its general purpose to make uniform the law of those states that enact it." *See Bank One, Texas N.A. v. Stewart,* 967 S.W.2d 419, 438 (Tex.App.—Houston [14th Dist.] 1998, no writ) (citing TEX. PEN.CODE ANN. § 311.028 (Vernon 1988)). Therefore, given the purpose of the Model Penal Code to establish a guideline penal code, we place particular emphasis upon the understandings of the Model Penal Code's drafters in determining the legislative intent of the comparable provisions of the Texas Penal Code.

The Model Penal Code provision defining the offense of kidnaping, section 212.1, requires an individual be moved a "substantial" distance from his residence or business, or be confined for a "substantial" period of time in order to constitute the offense. The Commentaries explain that the Model Penal Code's requirement of "substantial" movement or confinement was designed to remedy the abusive use of kidnaping statutes to reach conduct which was incidental to the commission of another substantive criminal offense:

[A] ... potential danger which a rational penal code must avoid is that the definition of kidnaping will sweep within its scope conduct that is decidedly wrongful but that should be punished as some other crime. Thus, for example, the robber who forces his victim to move from one room to another in order to find a cashbox or open a safe technically may commit kidnaping as well as robbery. This reasoning raises the possibility of cumulative penalties or of higher sanctions for kidnaping, even though the "removal" of the victim to another place was part and parcel of the robbery and not an independent wrong.

\* \* \* \* \*

Experience reveals numerous instances of abusive prosecution under expansive kidnaping statutes for conduct that a rational and mature penal law would have treated as another crime.

M.P.C. § 212.1, Commentary, p. 220–221. Thus, by requiring "substantial" movement or confinement of a complainant, the Model Penal Code attempted to exclude from the scope of kidnaping restraint or movement that was either trivial, or merely incidental to another substantive offense. M.P.C. § 212.1, Commentary 2, p. 232.

The Texas kidnaping statute is derived from the Model Penal Code and has altered little in substance. *See and compare,* TEX. PENAL CODE § 20.04 *with,* Model Penal Code and Commentaries § 212.1 (American Law Institute 1980). The initial draft of Texas's kidnaping statute was presented to the Revision Committee by Judge Frank Maloney on January 13, 1967.[3] The draft followed closely the language of Model Penal Code section 212

---

**3.** The Honorable Frank Maloney served as a judge on the Court of Criminal Appeals from 1991 through 1996.

and on its face is similar to the current aggravated kidnaping statute.[4] *See*, Minutes, Texas State Bar Committee on Revision of Penal Code, January 13, 1967, pp. 10–11 (Available in State Legislative Library).

Perhaps because of the apparent breadth of the initial draft of the kidnaping statute, subsequent proposed drafts of the Texas statute adopted the Model Penal Code's requirement that a complainant be moved a substantial distance or detained for a substantial period. *See and compare*, Texas Penal Code, A Proposed Revision by the State Bar Committee on Revision of the Penal Code, Preliminary Final Draft, September 1970, Chapter 20, § 20.01 (2nd Printing Nov. 1970), *with*, Model Penal Code § 212.1, p. 209–210. The two provisions are virtually identical. Notably, in its comment to the proposed draft, the Revision Committee expressly precluded application of the kidnaping statute to detentions or movement incidental to another offense:

> [T]he victim either must be moved a "substantial distance" or "detained for a substantial period." *The substantial period of detention requirement excludes from this offense, for example, a bank robbery in which the actor orders those in the bank to line up against the wall. Such conduct is not kidnaping*, although it does constitute false imprisonment under Section 20.02.

Texas Penal Code, A Proposed Revision by the State Bar Committee on Revision of the Penal Code, Preliminary Final Draft, September 1970, § 20.01 p. 2–3 (emphasis added).

The drafters of the Texas Penal Code subsequently revised the proposed kidnaping statute, renumbering it to section 20.04 and renaming it "aggravated kidnaping."[5] *See* Texas Penal Code, A Proposed Revision, Final Draft 1972, § 20.01 (Final Draft October 1972) (located in the State Legislative Reference Library). The aggravated kidnaping statute was clearly based on the Model Penal Code, the only substantive difference being the inclusion of an

---

4. Judge Maloney's initial draft did not include the Model Penal Code's language requiring the complainant be moved a "substantial distance" or detained a "substantial time." The minutes reflect that during the discussion of the proposed draft, there was a concern over the lack of a limitation on the apparent breadth of the proposed statutory language:

> Mr. Maloney stated that at the reporters meeting a question was raised about his use of the term "one place to another" rather than the MPC's more detailed provision about removal for a substantial distance or substantial time. He explained that the objection to his draft was that it was so broad that it would cover the case where during the commission of an armed robbery a person was locked in the back room of his own establishment, and thus be moved from "one place to another." Mr. Maloney believes that the case would be covered by his language, *but that prosecution for kidnaping in such a case is unlikely. He also explained that he assumes that Texas law will continue to be that a person will only be charged and convicted of one offense, and that the doctrines of autre fois acquit and autre fois convict will be applicable.*

Minutes, Texas State Bar Committee on Revision of Penal Code, January 13, 1967, p. 11 (Available in State Legislative Library)(emphasis added).

At the time of Judge Maloney's testimony, the carving doctrine was in effect. That doctrine prevented the State from charging a defendant with more than one crime arising out of the same criminal transaction. *See Valadez v. State*, 979 S.W.2d 18, 21 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd.). However, the carving doctrine was abandoned in *Ex parte McWilliams*, 634 S.W.2d 815, 824 (Tex.Crim.App.1982).

5. The State Bar Drafting Committee created a lesser offense of "kidnaping" numbering it section 20.03. That offense is identical to the present day kidnaping statute provided by Texas Penal Code section 20.03 (Vernon's 2000).

additional basis for the offense—abduction for the purpose of injuring or sexually abusing the complainant. *See* Tex. Pen. Code Ann. § 20.04(a)(4).

■ The Revision Committee's 1972 revisions are further instructive of the legislative intent behind the kidnaping statute. In place of section 20.01, the Revision Committee adopted definitions of "restrain" and "abduct" which were derived directly from New York Penal Law section 135.00. *See,* Tex. Pen.Code Ann. sec. 20.01, Historical Note (Vernon's 1974). A comparison of Texas Penal Code section 20.01(1) and (2) and New York Penal Law section 135.00(1) and (2) reveals the former is an almost verbatim copy of the latter, differing only stylistically.[6] A general rule of statutory construction holds that where the Legislature adopts the language of a foreign statute, it also adopts the foreign state's interpretation of that statute. *See State v. Riewe,* 13 S.W.3d 408, 411 (Tex. Crim.App.2000) (citing *State v. Moreno,* 807 S.W.2d 327, 332 n. 5 (Tex.Crim.App. 1991); and *Ollre v. State,* 57 Tex.Crim. 520, 123 S.W. 1116, 1118 (1909)). *See also, State v. Klein,* 154 Tex.Crim. 31, 224 S.W.2d 250, 253 (1949) ("Where a Federal statute is adopted in a statute of this State, the presumption follows that the legislature knew of and intended to adopt the construction placed upon the Federal stat-

ute by the Federal courts."); *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 360 (Tex.2000) (same).

We will, therefore, (additionally) review the manner in which the New York Courts have interpreted the restraint and abduction definitions of their kidnaping statute, which was also based upon the Model Penal Code, as a guide for determining the intent behind the Texas statute. *See In re Estate of Ayala,* 702 S.W.2d 708, 711 (Tex. App.—San Antonio 1985, no pet.) (where Texas pretermitted child statute was similar to New York statute and there was no guiding Texas case law interpreting Texas statute, Texas courts would rely upon New York court's construction of statute for guidance).

In applying the requirement of substantial interference, the New York courts have long adopted the position that where confinement or movement of a complainant is an incidental part of the commission of a different offense, the "kidnaping" merges into the other offense. For example, the seminal case of *People v. Levy,* 15 N.Y.2d 159, 164–65, 204 N.E.2d 842, 844, 256 N.Y.S.2d 793, 796 (1965), considered a 1965 prosecution for robbery and kidnaping. During the course of a robbery, the complainants were forced into a car and driven 27 blocks over the course of 20 minutes. The New York Court of Appeals held

---

**6.** New York Penal Law section 135.00 (Unlawful imprisonment, kidnaping and custodial interference; definition of terms) provides in pertinent part as follows:

. . .

1. "Restrain" means to restrict a person's movements intentionally and unlawfully in such manner as to *interfere substantially* with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person moved or confined "without consent" when such is accom-

plished by (a) physical force, intimidation or deception, or (b) by any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement. (emphasis added)

2. "Abduct" means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force.

there was no kidnaping even though the defendant's conduct technically fell within the wording of the statute:

> In the case before us the movement of the automobile, which was itself the situs of the robbery, was not essentially different in relation to the robbery than would be the tying up of a victim in a bank and his movement into another room. In essence the crime remained a robbery although some of the kidnaping statutory language might literally apply to it.

*Id.*, 15 N.Y.2d 159, 204 N.E.2d 842, 256 N.Y.S.2d 793, 796. *See also People v. Cain*, 76 N.Y.2d 119, 556 N.E.2d 141, 556 N.Y.S.2d 848 (1990); *People v. Lombardi*, 20 N.Y.2d 266, 229 N.E.2d 206, 282 N.Y.S.2d 519 (1967).

Subsequently, in *People v. Cassidy*, 40 N.Y.2d 763, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976), the New York Court of Appeals explained that the "merger doctrine is intended to preclude conviction for kidnaping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not be fairly attributed to them." *Id.*, 390 N.Y.S.2d at 47, 358 N.E.2d 870. Significantly, the New York Court of Appeals acknowledged the application of the "merger doctrine" to instances of restraint and abduction in the course of another felony derived from the concerns expressed in Model Penal Code section 212.1. *Id .*, 40 N.Y.2d 763, 358 N.E.2d 870, 390 N.Y.S.2d at 46 n. 1.

It is clear, therefore, that by adopting the New York Penal Law's definitions of "abduct" and "restrain," the Revision Committee sought to impose substantive limits upon the statute's inherent breadth. The adoption of the New York law merely reinforced the drafting committee's prior

limitation of the scope of the kidnaping statute. *See* Committee Comment, Texas Penal Code Proposed Revision Preliminary Final Draft, September 1970, § 20.01 p. 2–3. A consistent reading of the Revision Committee comments on the kidnaping statute, in context with the adoption of New York's definition of restraint and abduction leads to the inescapable conclusion that the Revision Committee, like the drafters of the Model Penal Code and the New York Penal Law, contemplated a kidnaping statute that limited its applicability to situations where the confinement or movement of a complainant was more than simply an incident to another substantive criminal offense.

The Legislature adopted the proposed Texas Penal Code without revision on June 6, 1973. *See* Acts 1973, 63rd Leg., ch. 392, § 1, p. 883 (effective January 1, 1974). Under established cannons of statutory construction, we must presume that the Legislature was aware of both the interpretation of the kidnaping statute by the drafters of the Model Penal Code, as well as the interpretation given to the definitions of restraint and abduction by the New York Courts. *See Boykin*, 818 S.W.2d at 785; *Riewe*, 13 S.W.3d at 411. Thus, we may presume that the Legislature adopted the Revision Committee's limitations upon the scope of the kidnaping statute as well as that interpretation of section 20.01 adopted by the New York courts. *See Aguirre v. State*, 22 S.W.3d 463, 471 (Tex.Crim.App.1999) (where Legislature adopts provision by drafting committee without substantive changes, the drafting committee comments regarding the statute are the most important expression of legislative intent).

Therefore, consistent with the Model Penal Code, the Revision Committee of the Texas Penal Code and the New York Courts we hold that to "interfere

substantially" under section 20.01(1) requires more than temporary confinement or slight movement which is part and parcel of the commission or attempted commission of another substantive criminal offense.[7]

## IV. Resolution.

 In applying this holding to the instant case, we find appellant's conduct in following the complainant into the bank, preventing her from leaving, having her disarm the alarm and following her to the vault did not constitute more than temporary confinement or slight movement which was part and parcel of the attempted aggravated robbery. Therefore, the evidence is legally insufficient to prove aggravated kidnaping under Texas Penal Code section 20.04 because appellant's conduct did not "interfere substantially" with the complainant's liberty as required by Texas Penal Code sections 20.01(1) and (2). The first point of error is sustained.

Due to our resolution of the first point of error, we need not address the remaining points. The judgment of the trial court is reversed. The case is remanded to that court with instructions to enter a judgment of acquittal.

---

**7.** We also note that in construing the meaning of a statute, we must avoid absurd consequences. *See Boykin*, 818 S.W.2d at 785. To hold that every act of confinement or movement committed in the course of another substantive offense constituted kidnaping, would essentially mean that every robbery and sexual assault, as well as large numbers of aggravated assaults and murders would likewise constitute aggravated kidnapings. *See* TEX.

PEN.CODE ANN. § 20.04(a)(3). Applying such a holding in the last instance would have the effect of bootstrapping several murders into capital murder. Clearly, this was not the intent of the Revision Committee in drafting the kidnaping statute, and there is no support in the legislative history that the Legislature approved such a broad interpretation of the kidnaping statute.