NUMBER 13-01-568-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

MICHAEL SHANE WALKER,                                                   Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                          Appellee.

 



 

                        On appeal from the 377th District Court

                                  of Victoria
County, Texas.

 



 

                                   O P I N I O N

 

          Before Chief Justice Valdez
and Justices Yañez and Castillo

                                  Opinion by
Justice Castillo

 








Appellant, Michael Shane Walker, was charged with the felony
offense of aggravated kidnapping.[1]  Walker was found guilty by a jury and
sentenced to twenty years imprisonment. 
In his sole issue presented, Walker contends that the trial court erred
in holding the evidence legally sufficient to prove the abduction element of
aggravated kidnapping.  We affirm.

FACTS








At around 4:00 on the afternoon of December 29, 2000, a
mentally handicapped eleven-year-old boy, F.S., went  with his father and sister to Crescent
Valley, between Bloomington and Victoria, 
where they had a trailer and kept 
horses.  F.S., a friendly boy, would
go with people if he thought they were nice people.  The boy stayed in the trailer to watch
television while his sister and father worked to repair the water well.   About twenty to thirty minutes after they
began working on the well,  F.S.=s father and
sister heard a loud Ahitting or
banging@ noise coming
from the trailer and believed it was F.S. Abumping a door
back or something.@  After approximately thirty more minutes, the
two started looking for F.S., because the well was fixed and his medicine was
overdue.[2]  F.S. was not in the trailer, and so they
began looking for him outside and calling him by his nickname.  F.S.=s father
thought he heard F.S. say, AHere I am,
Daddy@ but his
daughter did not hear it.  He was unable
to determine where the voice had come from, and so he concluded that perhaps he
had imagined it.

Unable to find his son, F.S.=s father contacted the sheriff=s department
and was advised that F.S. was at the hospital emergency room.  F.S. had been found in a shed behind the
second house away from the trailer.  The
resident,  Joyce Matchett, was not known
to the family.   F.S. told his father
that appellant appeared at the trailer door asking for John, who had previously
worked on the property.  F.S. went with
the man to take him to John.  The man lead
F.S. away and over toward Matchett=s house.  The man asked F.S., AYou want to
[engage in sexual intercourse]?@

F.S.=s father did
not give permission for his son to be taken to the shed.   Previously, F.S. Anever left@ the trailer
and Anever went out
the gate@ unless his
father was holding his hand.  He would
wait until his father held his hand to walk him to the gate of the property
because his father was afraid he might run out onto the road.   Two gates on the property were locked, one
with a lock and key, the other with a wooden latch too high for F.S. to
reach.  F.S. could not climb over the
driveway gate because it had barbed wire on it. 














Joyce Matchett, a corrections officer with the Texas Department
of Criminal Justice,  lived with
appellant until early December 2000 in the house in front of the shed where
F.S. was found.  After an argument on
December 29, 2000, she drove appellant to his home in Bloomington.  Upon returning home, she decided to put
appellant=s things in a
box Ain the
event  he came back@ because he
needed to work the next day, but she did not want him at her house any
more.   She put his clothes and snack
foods in the box and placed the box on her front porch.   Appellant pulled into her driveway in a
pickup truck and knocked on her front door. 
When Matchett opened the door, she noticed appellant was on the porch
and a child she did not know was behind him at the bottom of a ramp leading up
to the porch.  The child was eating one
of the fruit pies she had placed in the box for appellant.   When Matchett asked about the child and
about his parents, appellant responded that Ashe@ was slow and Ashe@ was old.  Matchett shut the door and told appellant she
did not want to see him anymore.  Later,
she heard some yelling and looked out the window but did not see appellant or
the child anymore.  She opened up the
front door and saw F.S.=s father
calling out a name, which she thought was a horse=s name. 
She did not connect the name with the child because she did not know
that the man had any children.  After
that, she heard noise in her back yard and saw things being thrown out of the
shed.  She assumed it was appellant
acting out of anger toward her.  Later,
she went to the back yard through her back door because the noise was
continuing and items were still being thrown from the shed.   She explained that she had to walk down some
stairs, go through a door,  and turn
around in order to see into the shed.  
She described seeing a little boy standing there.  He had his shirt and boots on, but did not
have his pants on.  His underwear was
down around one ankle.  Appellant Awas standing
there with his hand above his head and he had struck the child.@  Appellant struck the child once in her
presence.  Appellant said, AHe=s got a dick@ several times,
and the child, bloodied[3],
Ajust stood
there@ and said he Awas sorry@ a couple of
times.

Matchett called 911 and kept telling appellant to Aget away from
the child@ and  Atried to get
the child away@ from
appellant, but, at one point, appellant came toward her and threw a stroller
out of the shed.  She kept telling the
child to get away from appellant, and F.S. ultimately walked into her house
with appellant following.   She told
appellant to leave but he did not; he tried to wash the blood off the
child.  The child kept apologizing.  

A criminal trespass warning had been given to appellant in
early December, advising him that Afurther entry
onto the property was illegal.@   Matchett had reported then to law
enforcement that she did not want him at her residence and requested that he be
issued the warning.  

F.S. sustained a bite to his cheek, a laceration to his finger,
scratches to his face and head, large abrasions to his left upper hip and
thigh, bleeding from his nose and mouth, and a Asubstantial@ blow to the back of his head.  He told the emergency medical technician
attending him that Asomebody took
him into a truck and took him to a shed@ and Akept hitting@ him.








At trial, the sole witness for the defense testified that, at
about 2:00 p.m. on the same day, he gave appellant a ride to his girlfriend=s house.  When he approached, a little boy was on the
side of the road throwing rocks at his truck. 
While appellant was on the porch of his girlfriend=s house, the
little boy was standing next to him.  The
witness believed the child belonged to the girlfriend, because he walked up to
the door.

STANDARD OF REVIEW

Walker=s issue
questions the legal sufficiency of the evidence.  When reviewing legal insufficiency claims, we
view the evidence in the light most favorable to the conviction and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  See
Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Young v. State, 14
S.W.3d 748, 753 (Tex. Crim. App. 2000). 
If the fact finder=s conclusion is
warranted by the combined and cumulative force of all the incriminating
circumstances, then the evidence is sufficient. 
Flores v. State, 551 S.W.2d 364, 367 (Tex. Crim. App. 1977).

ANALYSIS

Walker contends the trial court erred in finding him guilty of
aggravated kidnapping because the evidence was legally insufficient to prove he
abducted the child.  A person is guilty
of aggravated kidnapping if he Aintentionally
or knowingly abducts another person with the intent to . . . violate or abuse
him sexually.@  Tex.
Pen. Code Ann. ' 20.04(a)(4)
(Vernon Supp. 2002).  The term Aabduct@ means Ato restrain a
person with intent to prevent his liberation by . . . secreting or holding him
in a place where he is not likely to be found.@  Tex. Pen. Code Ann. ' 20.01(2)(A)
(Vernon Supp. 2002).  The term Arestrain@ means: 








to
restrict a person=s movements
without consent, so as to interfere substantially with his liberty, by moving
him from one place to another or by confining him. . . . Restraint is Awithout consent@ if it is
accomplished by any means, including acquiescence of the victim, if he is a
child less than 14 years of age or an incompetent person and the parent,
guardian, or person or institution acting in loco parentis has not acquiesced
in the movement or confinement.

 

Tex. Pen. Code Ann. ' 20.01(1)(B)
(Vernon Supp. 2002).

 

Within the meaning of the term Aabduct,@ the phrase Asecreting or
holding him in a place where he is not likely to be found@ does not
modify the meaning of the term Arestrain.@  Brimage v. State, 918 S.W.2d 466, 475
(Tex. Crim. App. 1994, reh=g granted,
overruled on other grounds); see also Mason v. State, 905 S.W.2d 571,
575 (Tex. Crim. App. 1995) (holding that Asecretion . . .
(is) part of the mens rea of kidnapping, not the actus reus@).  This phrase illustrates one possibility of
how the mens rea requirement of intent can be satisfied.  Brimage, 918 S.W.2d at 475.  When restraint is established, a person is
guilty of aggravated kidnapping if there is evidence that he intended to
prevent the victim=s liberation
and that he intended to do so by secretion. 
Mason, 905 S.W.2d at 575.

Restraint








Walker contends that there is no evidence suggesting he
restrained the child because there is no evidence he transported the child to
the shed or held him there.  However,
because the child was under the age of fourteen, Walker need only have
restricted the child=s movement by Aany means,
including acquiescence of the victim,@ in order for
his actions to constitute restraint, provided that the child=s parents did
not consent or acquiesce to Walker=s actions.[4]  Tex.
Pen. Code Ann. '
20.01(1)(B)(i)(Vernon Supp. 2002). 
Restraint exists even if the child merely followed Walker into the
shed.  See id.  

Several factors in this case support the conclusion that Walker
walked with the child to the shed: (1) the child and he were in front of
Matchett=s house not
long before they were found together in the shed behind the house; (2) as
Walker=s clothes were
left outside the house readily accessible to him, the jury could reasonably
conclude he had no reason to be behind the house in the shed and no reason to
be in the shed  with the child;[5]  (3) according to the child=s father, the
child later said Walker had asked the child for sexual favors; and (4) the
child told a medical technician that someone had taken him into a truck and
into a shed.   A rational juror could
conclude the evidence established restraint.








We note that Walker=s argument on
appeal relies heavily on the Fourteenth Court of Appeal=s decision in Hines
v. State, 40 S.W.3d 705 (Tex. App.BHouston [14th
Dist.] 2001), rev=d, 75 S.W.3d 444
(Tex. Crim. App. 2002).  The court of
appeals in Hines stated that neither temporary confinement nor slight
restraint constitute the required substantial interference element of
restraint.  Id. at 713-14.  However, the Texas Court of Criminal Appeals
recently reversed the court of appeals decision.  Hines v. State, 75 S.W.3d 444, 447
(Tex. Crim. App. May 22, 2002) (holding that to interfere substantially with a
victim, one need not move the victim a certain distance or hold him a certain
amount of time).  The court of criminal
appeal=s decision in Hines
negates a central pillar in Walker=s argument and
further supports the conclusion that Walker satisfied the physical requirement
for aggravated kidnapping.

Intent to prevent liberation by secretion

Aggravated kidnapping requires a person to Aintend to
prevent (the victim=s) liberation
by . . . secreting or holding him in a place where he is not likely to be
found.@  Tex.
Pen. Code Ann. '
20.01(2)(A)(Vernon Supp. 2002); Mason, 905 S.W.2d at 575.  Considering all of the evidence in this case,
we find that it establishes legally sufficient evidence of  this intent. After asking the child for
sexual favors, Walker was found inside a shed with the semi-nude child.  Under notice of criminal trespass, Walker had
no lawful business in the shed with or without the child.  While in the shed, Walker was seen striking
the child who was injured and bleeding. In addition, when Matchett tried to
retrieve the child from the shed, Walker threw a stroller to keep her
away.  From the evidence, a rational
juror could infer the requisite intent to prevent liberation.








The evidence before the jury also showed that the these events
occurred in a shed where the victim was not likely to be found.  Matchett was unknown to the child=s  family. 
The property on which the shed was located was the second residence away
from  F.S.=s family=s property.  The shed was out of immediate sight in a back
yard in which F.S. did not belong with or without Walker.  After looking for F.S. around the area, his
father and sister could not find him.  A
juror could have found from this circumstantial evidence that Walker intended
to prevent the child=s liberation by
secreting him in a place he was not likely to be found.  Thus, a rational trier of fact could conclude
beyond a reasonable doubt that Walker possessed the necessary state of mind for
aggravated kidnapping.

Viewing the evidence in the light most favorable to the
conviction, a reasonable jury could have found the elements of restraint and
abduction beyond a reasonable doubt.  See
Jackson, 443 U.S. at 318-19. 
Therefore, the evidence is legally sufficient to support the verdict,
and Walker=s sole issue is
overruled.

CONCLUSION

Accordingly,
the trial court=s judgment is
affirmed.

 

 

ERRLINDA
CASTILLO

Justice

 

Do not
publish.

Tex.
R. App. P.
47.3(b).

 

Opinion delivered and
filed

this 8th day of
August, 2002.

 











[1] Tex. Pen. Code Ann. '
20.04(a)(4) (Vernon Supp. 2002).





[2]
F.S. takes Ritalin and when the medication wears off, he becomes nervous and
disoriented.  





[3]
F.S. had blood on Ahis
face, head and hands.@





[4]
There is no dispute that the child=s
parent did not acquiesce to the alleged restraining of the child. 





[5]
One investigating officer testified that the shed was full of Ajunk.@