Eric FISHER, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–732.

District of Columbia Court of Appeals.

Argued Jan. 19, 2000.
Decided March 9, 2000.

William T. Morrison, Silver Spring, MD, appointed by the court, for appellant.

Alex J. Bourelly, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Elizabeth H. Danello, Assis-

tant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This appeal presents a variation on the theme of inconsistent verdicts in a criminal case, arising from the fact that, as to each victim, the jury was given cumulative opportunities to consider second degree murder as a lesser included offense, when it should have been told to return a single verdict on that charge.

On the basis of two slayings in the course of an armed burglary and robbery, appellant Fisher was charged with (*inter alia*) multiple counts each of first degree felony murder while armed and first degree premeditated murder while armed.[1] As to each murder victim, the jury was properly instructed that it could consider second degree murder as a lesser included offense of both felony murder and premeditated murder. It was not told, however, that as to each victim it could return only one verdict on second degree murder; and as to each victim the verdict form asked it to consider second degree murder three times—twice as a lesser included offense of felony murder (the predicates being armed burglary and armed robbery) and once as a lesser included offense of premeditated murder. As it happened, the jury then acquitted Fisher of all counts of first degree murder and of second degree murder as a lesser included offense of premeditated murder, but found him guilty of second degree murder as a lesser included offense of all counts of felony murder. On appeal Fisher contends, first, that the jury may have convicted him of what he asserts is the nonexistent offense (in this jurisdiction) of "second degree felony murder." Viewing the jury instructions as a whole, we are satisfied that the verdict

reflects no such conviction. Fisher also argues that the acquittal of second degree murder as a lesser included offense of premeditated murder nullified his convictions for second degree murder, so that he cannot stand convicted of any murder. On the basis of the law governing inconsistent verdicts, we reject this argument. Finding no merit in his remaining contentions as well, we affirm.

## I.

The evidence fairly allowed the jury to conclude that Fisher and two other men (Walker and Cawthorne) planned and executed the robbery of Rodney Bailey, in the course of which they shot to death both Bailey and his girlfriend, Nikisha Simpson. According to the government's proof, on February 1, 1994, Charee Lytle drove the three men to Bailey's house where Fisher and Cawthorne, both armed, entered intending to rob Bailey. While Cawthorne went upstairs looking for money, Fisher confronted Bailey downstairs, demanded money, and shot him when Bailey appeared to resist. Fisher then joined Cawthorne upstairs where they found Simpson in a bedroom and ordered her to reveal the location of Bailey's money. When she professed ignorance, they ransacked the room and when she continued denying knowledge of the money, Fisher shot her repeatedly, killing her. The two men returned to the lower floor where Fisher, seeing Bailey still alive, shot him in the back of the head. They then fled to Lytle's car where all four occupants divided up cocaine taken from the house.

Through cross-examination, Fisher attempted to show that Cawthorne had an independent motive to kill Bailey, who had threatened him if he did not return money Cawthorne owed him. Fisher testified that he had entered Bailey's home with Cawthorne merely to get some nose tissue and was surprised by Cawthorne's action in shooting the victims.

1. Since the "armed" element of the crimes plays no role in the primary issues presented,

we generally omit it from further discussion of the crimes.

## II.

■ The jury convicted Fisher of the predicate felonies of armed burglary and armed robbery but, as indicated, acquitted him of the two counts each of felony murder and premeditated murder while both acquitting and convicting him of second degree murder as to each victim. Fisher does not dispute that second degree murder may be a lesser included offense of both premeditated murder and felony murder. Specifically, in relation to felony murder,[2] a conviction of second degree murder is proper "if there is proof from which the jury might reasonably find that the defendant did not commit one of the [statutorily] enumerated felonies but was guilty of an intentional killing on impulse." *Fuller v. United States,* 132 U.S.App.D.C. 264, 294, 407 F.2d 1199, 1229 (1968) (en banc); *see Towles v. United States,* 521 A.2d 651, 657 (D.C.1987) (en banc). Fisher reads the jury's mixed verdict, however, as revealing that it found him guilty of a crime that he maintains does not exist in this jurisdiction, second degree *felony* murder.[3] He derives that conclusion from two facts. First, he argues that the jury's acquittal of premeditated murder and second degree murder as a lesser offense of that charge proves that it "ruled out the existence of malice apart from that imputed from the commission of the two [predicate] felonies." And second, he points to the jury verdict form on which the trial judge described the second degree murder charges descending from felony murder as

"Second Degree Murder While Armed (alleged burglary or housebreaking resulting in death of Rodney Bailey [and Nikisha Simpson, respectively] )" and "Second Degree Murder While Armed (alleged armed robbery resulting in death of Rodney Bailey [and Nikisha Simpson, respectively] )." The verdict form, Fisher asserts, invited the jury to predicate *second* degree murder convictions on the commission of the charged burglary and/or robbery, without more.

■ We find no realistic possibility in the record that the jury convicted Fisher of a crime of "second degree felony murder" on which it was never instructed. That crime, if it exists in this jurisdiction, involves a nonpurposeful killing during the commission of a felony not enumerated in the felony murder statute. See note 3, *supra.* But since Fisher was charged only with the enumerated felonies of armed burglary or housebreaking and robbery, the trial court had no occasion to—and did not—instruct the jury on the elements of that putative crime. Rather, the court's oral instruction on second degree murder consisted of the standard definition of the crime as requiring (*inter alia*) that the defendant either "had the specific intent to kill or seriously injure the decedent or acted in conscious disregard of an extreme risk of death or serious bodily injury to the decedent." *See Comber, supra* note 3, 584 A.2d at 38–39. The jury therefore was told that a finding of malice (as de-

---

2. Felony murder is defined in this jurisdiction as follows:

> Whoever ... kills another purposely ... in perpetrating or attempting to perpetrate an offense punishable by imprisonment ... or without purpose to do so kills another in perpetrating or in attempting to perpetrate any arson, ... first degree sexual abuse, first degree sexual abuse, first degree child sexual abuse, first degree cruelty to children, mayhem, robbery ... kidnaping, ... housebreaking while armed with or using a dangerous weapon, or ... felony involving a controlled substance, is guilty of murder in the first degree.

D.C.Code § 22–2401 (1996 & Supp.1999)

3. In *Comber v. United States,* 584 A.2d 26, 40 n. 15 (D.C.1990) (en banc), this court observed that "[w]hat remains unclear in the District of Columbia is the status of one who commits a non-purposeful killing in the course of a felony not specified in D.C.Code § 22–2401." The court did not resolve the question but rather left open whether there exists in this jurisdiction "a residual category of second-degree felony murder, in which the malice required for murder stems from the commission of a non-enumerated felony." *Id.* at 40. Our resolution of Fisher's argument makes it unnecessary for us to consider whether such an offense exists in the District of Columbia.

fined) was necessary to convict Fisher of second degree murder; a lesser state of mind (*e.g.*, purposeful commission of any felony) would not suffice. The trial court's parenthetical coupling of second degree murder with the charged predicate felonies in the verdict form, while unfortunate, does not persuade us that the jury ignored its instruction to find malice as an essential component of a conviction for second degree murder. Fisher's additional argument—that the jury "ruled out the existence of malice" by acquitting of premeditated murder and second degree murder as a lesser offense of that crime—simply raises the question of inconsistent verdicts by assuming that the jury, applying the definition of second degree murder and given redundant opportunities to convict of that offense, could not lawfully both convict and acquit him of the offense in relation to the same victim.

Thus, we are brought to Fisher's second contention, which is that the acquittals of second degree murder nullified, in the law's eye, his corresponding convictions for that offense. We begin by rejecting his reliance at oral argument on *Turner v. United States,* 459 A.2d 1054 (D.C.1983), *aff'd on reh.,* 474 A.2d 1293 (D.C.1984). *Turner* resembles this case superficially in that the jury there, instructed on second degree murder as a lesser included offense of both felony murder and premeditated murder, acquitted of the charge as an included offense of the former while failing to reach a verdict on it as an included offense of the latter. The government then sought to retry Turner on the charge on which the jury had hung. Agreeing with his objection to retrial on double jeopardy grounds, this court held that principles of collateral estoppel implicit in the double jeopardy clause, *see Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), barred retrial on second degree murder because the jury's previous acquittal on the charge had resolved in Turner's favor the "issue[s] of ultimate fact," *i.e.,* whether he "caused the death of the victim and ... acted with malice and

not in the heat of passion." *Turner,* 459 A.2d at 1057.

Besides the fact that the *Turner* jury, unlike the jury here, made no finding of *guilt* on second degree murder, the issue in *Turner* was one of successive prosecutions, as to which the Constitution—the double jeopardy clause in particular—applies special rules. *E.g., Ashe, supra.* The present case, in marked contrast, presents only the issue of what effect is to be given a conviction in a single trial when the same jury has inconsistently acquitted of that offense. In this setting very different rules apply, to which we now turn.

At least since 1932, the Supreme Court has made clear that courts are not to inquire into the thinking of a jury with respect to inconsistent verdicts in a single trial. In *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Court, through Justice Holmes, explained the reason as follows:

> Consistency in the verdict is not necessary.... The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.
>
> ✳   ✳   ✳   ✳   ✳   ✳
>
> That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

*Id.* at 393–94, 52 S.Ct. 189 (citation and internal quotation marks omitted). In *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Court reaffirmed "the *Dunn* rule" in a context where the jury had convicted of a "compound" offense while acquitting of a lesser

offense that formed an element of the broader offense. *Id.* at 64–65, 105 S.Ct. 471. Pointing out that the rule "embodies a prudent acknowledgment of a number of factors," including the fact that what may be a "mistake[n]" or compromise acquittal on one offense is beyond the prosecution's ability to rectify by appeal, the Court perceived no unfairness to the defense (since "it is unclear whose ox has been gored") in leaving an inconsistency undisturbed. *Id.* at 65, 105 S.Ct. 471. Moreover, "an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id.* at 66, 105 S.Ct. 471. Most importantly, perhaps, the Court reiterated Justice Holmes's point that the argument for inquiring behind inconsistency "assumes that the acquittal on the [one] offense was proper—the one the jury 'really meant,'" when "[t]his, of course, is not necessarily correct; all we know is that the verdicts are inconsistent." *Id.* at 68, 105 S.Ct. 471. In sum, a defendant "is given the benefit of [his or] her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted." *Id.* at 69, 105 S.Ct. 471. *See also Jones v. United States,* 716 A.2d 160, 164 (D.C. 1998); *United States v. Dobyns,* 679 A.2d 487, 490 (D.C.1996); *Ransom v. United States,* 630 A.2d 170, 172 (D.C.1993); *Freeman v. United States,* 495 A.2d 1183, 1186 (D.C.1985); *Steadman v. United States,* 358 A.2d 329, 332 (D.C.1976).

■ Fisher has no way around these decisions except to argue that the jury acquitted him on the *identical* charge for which they also convicted—which certainly highlights the inconsistency in the verdict but does not change its character. In the more typical inconsistent verdict case exemplified by *Powell,* the charges in question are the "same offense" in the sense that one consists of some but not all of the elements of the other (the greater or compound) offense. *See, e.g., Dobyns, supra* (jury convicts of possession of a firearm during commission of a crime of violence (PFCV), while acquitting of offenses that were the predicate "crimes of violence"); *Ransom, supra* (conviction of PFCV, acquittal of predicate assault with a dangerous weapon). The argument in those cases is nonetheless the very same one made here, which is that the jury's simultaneous acquittal on a constituent element—if not all of the elements—of an offense on which it has convicted makes the conviction a nullity. As the case law abundantly establishes, it does not. Fisher no more may argue that the acquittal of second degree murder (rather than the conviction) was "the one the jury 'really meant'" than the government may argue the opposite. *Powell, supra.* We do not and cannot know, and so the course required of us "is simply to insulate [the] jury['s] verdict[ ] from review on [the] ground [of inconsistency]." *Powell,* 469 U.S. at 69, 105 S.Ct. 471.

We conclude by observing that the problem here could have been avoided if the jury had been told that, while second degree murder is a lesser included offense of both premeditated and felony murder, it should consider the charge only once (as to each victim) in returning a verdict. *See Turner,* 459 A.2d at 1057 n. 1. That advice presently appears in the comment to standard jury instruction No. 4.22 ("Order of Considering [homicide] Charges"),[4] but not in the text. In the next revision of the instructions, it should be elevated to the text.

## III.

■ Fisher's remaining contentions need not detain us. He argues that in responding to a jury note the trial court erred in failing to modify the aiding and abetting instruction as it related to the

---

4. *See* Criminal Jury Instructions for the District of Columbia, No. 4.22 (4th ed.1993).

crime of PFCV.[5] The argument fails both because he did not question the court's choice of language in reinstructing the jury, *see* Super. Ct.Crim. Rules 30, 52(b), and because the aiding and abetting instruction needs no modification in regard to possessory weapon offenses like PFCV. *See Dang v. United States,* 741 A.2d 1039, 1043 (D.C.1999); *Roy v. United States,* 652 A.2d 1098, 1107 n. 19 (D.C.1995). Contrary to his additional argument, the evidence fully supported his PFCV conviction either as a principal (*i.e.,* he himself was armed) or as an aider and abettor. Lastly, Fisher's unrelated claim that a mistrial should have been declared after a juror fell asleep during a portion of the cross-examination of a government witness has been waived. His attorney declined the court's invitation to repeat the relevant questioning, and when it later became necessary to seat the juror as a regular (the court in the meantime had made the juror an alternate), counsel made no objection, telling the court: "I don't know how long the juror was asleep, but I don't suspect it was for very long. I know the court has been watching the jury." In these circumstances, the court was not obliged to grant a mistrial *sua sponte. Cf. United States v. Tierney,* 947 F.2d 854, 868–69 (8th Cir. 1991) (assertion that juror slept through "critical" parts of defendant's case "too vague to establish prejudice").

---

**5.** D.C.Code § 22–3204(b) (possessing a firearm during a crime of violence). Fisher contends the jury should have been told specifically that, to convict him as an aider and abettor of that crime, it must find that he performed an act which directly facilitated or encouraged possession of the firearm.