Bryant McCLAIN, Appellant,

v.

UNITED STATES, Appellee.

No. 01–CF–1018.

District of Columbia Court of Appeals.

Argued Dec. 1, 2004.

Decided April 14, 2005.

---

6. *See, e.g., In re Steely,* 806 A.2d 1236 (D.C. 2002).

Cortney Lollar, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Valinda Jones, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, John R. Fisher, Roy W. McLeese III, and Angela G. Schmidt, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and WASHINGTON, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

This appeal presents for our decision whether the trial court committed plain error when it instructed the jury regarding two lesser-included offenses of the crime of armed robbery of a senior citizen with which appellant had been charged by the Grand Jury. The trial judge instructed the jury that they could consider robbery of a senior citizen *and* assault with a dangerous weapon ("ADW") as lesser-included offenses of the armed robbery of a senior citizen charge.

Appellant McClain contends that the trial court erred because the two lesser-included offenses were alternatives and therefore the jury could convict on one or the other, but *not on both*. Appellant vigorously maintains that ADW and robbery, the two lesser-included offenses, when taken together, contain all of the elements of the greater offense and, therefore, the trial judge should have instructed the jury that if they found appellant not guilty of the greater offense, they could only find him guilty of *one* of the lesser-included offenses. Thus, in appellant's view, the trial court's failure to do so constituted plain error.

We conclude based on the evidence the jury heard in this case, especially the witnesses' varying testimony with respect to some of the crucial elements of the greater offense, that the trial court did not commit plain error in instructing the jury. Therefore, we affirm.

It is necessary first to detail the evidence and instructions presented to the jury, then to describe the jurors' questions to the court and the court's responses, and, finally, to summarize the arguments the defendant-appellant and the government presented to the trial judge after the defense filed a post-verdict motion for a new trial on the ground the trial court had failed, *sua sponte*, to instruct the jury correctly.

## I.

In May 2000, the Grand Jury returned a two-count indictment against appellant. The first count charged him with armed robbery of a senior citizen and the second count charged him with possession of a firearm during a crime of violence, violations, respectively, of D.C.Code §§ 22–2901, –3202 and –3901(a) and D.C.Code § 22–3204(b) (1981). The charges in this case stemmed from an incident that took

place at a car-repair shop in Northeast Washington on December 21, 1999. At trial in February 2001, the government presented four witnesses: the owner of the car-repair shop (Fernandez), his employee (Zimmerman), a customer (Ferguson), and a detective (Detective Bilek) who investigated the crime. The defense presented one witness, another detective (Detective Thompson).

Fernandez testified that he was at work in his car repair shop around noon on December 21, 1999, when appellant (known to him by his first name, Bryant) entered the garage with two other men. Appellant was a customer of the garage and, on two separate occasions in 1998, had brought two so-called antique cars in for repair. One car was a 1967 Dodge Polara and the other was a 1968 or 1969 Lincoln Continental. Fernandez testified that since 1998, he had completed some repairs on each car and that appellant had made a few payments to him totaling $1000.

Fernandez testified that when appellant came to the garage on December 21, 1999, appellant asked him about the status of the repairs and Fernandez advised him "that unless he brought in the spare parts, I couldn't do anything, and that if he was not going to help me, that he should take the cars with him . . . ." According to Fernandez, appellant responded in an angry tone of voice and demanded that Fernandez give him "[his] money." When Fernandez told him that "[he] didn't have the money . . . [t]hen [appellant] reached behind with his hand . . . he got out a weapon, a gun, and he pointed it to me and he said . . . [y]ou're going to give me the money."

Fernandez went on to testify that when he told appellant that he "did not have the money," appellant became angrier, walked behind the desk to where Fernandez was sitting and "just pushed [Fernandez] back

and . . . pointed with his gun right [at Fernandez's] privates." Fernandez testified that appellant had the gun in one hand, used his other hand to search Fernandez's shirt and pants pockets, took Fernandez's wallet out, went through it and then threw it on the desk, and finally found $25 in cash in the pocket of Fernandez's pants. After appellant found the money, he left the garage with his two companions, one of whom picked up and carried away a car battery booster which was on a chair near Fernandez's desk.

The garage employee, Zimmerman, testified that on the day in question he saw appellant and two others enter the garage through its back entrance from the alley. He spoke to appellant, whom he knew by the nick-name "Fruit" and who was "a pretty regular customer of the garage." He described appellant as a customer "who comes and gets it done and he's gone." Zimmerman described to the jury the work that had been done on the Dodge and the Lincoln Continental, what remained to be done, and opined that it was "hard to get stuff for antique cars now." He testified that he did not pay attention to the three men when they went into Fernandez's office because most customers went into the garage office to speak to Fernandez.

He recalled that while he was completing some repairs on another customer's car, the customer, Ferguson, commented that something was going on with Fernandez. Zimmerman then walked toward Fernandez's office to see what was wrong. Through the glass wall in Fernandez's office, he observed Fernandez behind his desk, sitting in his chair which was backed all the way up against the wall. Zimmerman then instructed Ferguson "to go around to the 7–Eleven to call the police." Zimmerman testified that after Ferguson left to call the police, the three men de-

parted and he went into Fernandez's office. When he approached Fernandez, he noticed that his "hair [was] all messed up and [he was] red in the face and all of his papers and stuff was [sic] scattered all over the desk from his pockets." He testified that Fernandez was "[n]ervous, real nervous ... [and] was trying to call the police himself."[1] Zimmerman testified that he took the phone from Fernandez and told the police the garage had been robbed and that "the man had a gun."[2]

Ferguson, a long-time customer of the garage, testified that while she was waiting in the garage, she saw three men "walk[ing] in together ... one behind the other, just as if they were just holding on a rope or something." Shortly thereafter, she saw appellant "over by [Fernandez's] desk and he was bent over ...." "[His] left fist [was] up in the air and his right hand was down close to the top of the desk ... [Fernandez] was pulling away from him and he kept [sic], and the further [Fernandez] would pull away, [appellant] got closer with his fist." Also, she saw something "black in his right hand" which she thought was a glove. When pressed on cross-examination, she described appellant's left hand as " balled up" and "just flesh," but his right hand had something black in it which "looked like a black glove."

Detective Bilek testified that as part of his investigation, he showed an array of photographs including appellant's photo to Fernandez and Zimmerman. He testified that both selected appellant as the man who had robbed Fernandez.

The defense called one witness, Detective Gary Thompson. Detective Thompson testified that after he arrived at the scene, he spoke with Fernandez who told him that when the gun was pointed at him, he took the $25 out of his pocket and gave it to the individual holding the gun. Appellant did not take the stand in his defense.

## II.

After both parties presented their evidence, the trial judge and counsel discussed the jury instructions. The record reflects that the conscientious trial judge had prepared draft instructions in advance for review by the prosecutor and defense counsel. Defense counsel also requested lesser-included offenses "all the way down to simple assault." When asked by the judge, defense counsel affirmed that he was requesting (as lesser-included offenses) robbery of a senior citizen and ADW. After further discussion regarding some of the other instructions, the trial judge adjourned for the remainder of the day.

The next morning, the trial judge presented the instructions he had drafted in response to counsel's request. The trial judge then stated:

> Well, I suppose, I mean the most difficult thing for us to talk about is going to be whether these lesser included offense instructions really should be given, if anyone wants them or whether they should be taken out either because whoever requested them no longer wants them or because even though they are still requested they are not appropriate.

The prosecutor commented that the ADW is "appropriate" because the jury upon the evidence presented could rationally conclude that appellant was *not* trying to rob

---

1. Zimmerman testified that Fernandez, a Bolivian by birth, had difficulty speaking English when he became excited or nervous.

2. Zimmerman testified that he never saw a gun. When he reported to the police that the robber had a gun, he did so based on what Fernandez had told him.

Fernandez, but that appellant had pointed a gun at him. Defense counsel advised the court that he had no objection "and I don't think I can really argue that the evidence doesn't support the instruction on ADW." Almost immediately after that statement, he requested "unarmed robbery of a senior citizen." At the end of their discussion, the judge summarized how he would present the instructions to the jury:

> I tell the jury, tell me if this makes sense to you, I tell the jury, obviously, they first consider the charge in the indictment, robbery of a senior citizen while armed. If they find the defendant guilty of that charge, they don't consider anything else in count one and they go to count two. [The count that charged him with possession of a firearm during a crime of violence.]
>
> If they find him not guilty of robbery of a senior citizen while armed, then they go on to consider both assault with a dangerous weapon and robbery of a senior citizen. If they find the defendant guilty of ADW, then they don't consider—they don't go on to consider assault.... So they go on to consider assault only if they find him not guilty of both ADW and robbery.

At the end of the judge's summary, defense counsel stated, "I think that's right."

Thereafter, the trial judge advised the jury the order in which counsel would make closing arguments (reminding the jurors that it was only argument), and the court further advised that he would then instruct the jury. The defense attorney argued that the evidence showed "that there was no gun that day . . . and no robbery that day." He specifically pointed out the "reasonable doubt" they must have: "Why would [appellant] commit an armed robbery for $25 and then leave those two cars that everyone comes around and admires right there for the owner to have?[3] It doesn't make sense. That's my reason to doubt."

The trial court instructed the jury at length and in detail. He directed the jurors first to consider whether McClain was guilty of robbery of a senior citizen while armed and if they found him not guilty of this charge, then they must consider and determine beyond a reasonable doubt whether appellant was guilty of both the lesser-included charges of robbery of a senior citizen and ADW. Should they find McClain not guilty of these offenses, then they must consider and determine if he was guilty beyond a reasonable doubt of second-degree theft and assault.

The trial court provided verdict forms to the jurors and reviewed those with them. The court instructed that should they find appellant guilty of count one (robbery of a senior citizen while armed), they should go directly to count two (possession of a firearm during a crime of violence). Also, the court charged that should they find appellant not guilty on count one, they should then consider and render verdicts *both* on the lesser included offenses of robbery of a senior citizen and assault with a dangerous weapon. Should they find him not guilty on those charges, then they must consider whether he was guilty of second degree theft and assault. The jury retired at 3:10 p.m. to deliberate.

### III.

Later in the afternoon, the jury sent a note to the court asking if they might consider appellant's fist to be a dangerous weapon. After discussion with counsel,

---

**3.** Zimmerman had testified that the antique cars were placed out in front of the garage to show passers-by.

the court instructed them "no." Shortly thereafter, the jury sent a second note asking that if they found appellant guilty of item 1–B on the verdict form, which was ADW, did that mean that "he is guilty of count one, robbery of a senior citizen while armed?" While both counsel agreed with the judge that the answer was no, the judge thought a more thorough answer might be necessary because he believed the jury's question indicated that the jury "may have gone on to consider a lesser included offense before reaching a verdict as to the greater offense ...."

The judge decided, and both counsel agreed, that the best way to proceed was to send a note to the jury saying, "I have received your note. It appears from your note that you have not yet reached a unanimous verdict as to the charge in count one, robbery of a senior citizen while armed. Is this correct ...." Four minutes after the judge sent his note, the jury responded with a note saying, "we have reached a unanimous verdict as to the charge in count one, robbery of a senior citizen while armed." Both counsel made recommendations about how the court should respond to the note. The judge took a brief recess to consider counsels' comments.

While court was recessed, the jury sent another note which said, "in this case *must* we conclude that 'dangerous weapon'" means "gun" and *only* a "gun?" The court, after a discussion with counsel, brought the jurors back into the courtroom to review their notes to him, his answers to them, his prior instructions to them, the order in which they should consider the counts, and the verdict forms. A few minutes later, the jury indicated that they had reached a verdict. They reported in open court that they found appellant not guilty

of robbery of a senior citizen while armed, guilty of robbery of a senior citizen, guilty of assault with a dangerous weapon and not guilty of possession of a firearm during the commission of a crime.

## IV.

After the verdict was entered, appellant filed a motion for a new trial pursuant to Super. Ct. Crim. R. 33. He argued that the jury's verdict with respect to the ADW count "appears irreconcilably inconsistent with the jury's acquittal on the charges of robbery of a senior citizen while armed *and* possession of a firearm during the commission of a crime of violence." (Emphasis added.) Appellant maintained that "although, in general, inconsistent verdicts must stand, one recognized exception exists where there is evidence of jury confusion and where the trial court has denied a defense motion intended to alleviate juror confusion." He argued that "the jury made its confusion evident through the notes it sent to the Court. The Court denied the defense request to attempt to alleviate that confusion by taking the jury's partial verdict on the charge of robbery of a senior citizen while armed." Appellant cited to this court's decision in *Whitaker v. United States*, 617 A.2d 499 (D.C.1992), to support his argument. He argued that "the interests of justice mitigate in favor of vacating [his] conviction on the [ADW] charge and ordering a new trial on that count." [4]

In addressing the post-trial motion, the trial judge began by stating that his concern about the verdict "was not what the defense had raised in its [n]ew [t]rial [m]otion." He stated that his concern was that

it might be the case that the jury could not find the defendant guilty of *both*

4. Interestingly, appellant acknowledged in his new trial motion *that neither party* had object-

ed to the court's reinstructions after the jury's notes or after the court's original instructions.

robbery of a senior citizen and ADW in light of its acquittal of the defendant on the charge of armed robbery of a senior citizen.... I have concerns ... about whether both convictions can stand in light of the acquittal on the greater charge. And consistent with that concern, I wonder, and I have from shortly after the verdict came back, if I might have erred in telling the jury to consider *both* of those lesser-included offenses, rather than telling them to consider first one and then the other, if they had found the defendant not guilty on the first lesser-included; but to go on to the second lesser-included only if they had found the defendant not guilty of ... robbery of a senior citizen. [Emphasis added.]

The trial court then addressed the claims in the defense's motion and stated, "I don't think that this case is like the *Whitaker* case ... in which the trial court declined to reinstruct the jury in a way aimed at resolving apparent juror confusion. Here, I believe that I did take reasonable steps, repeatedly, to resolve possible juror confusion." The trial court then denied the defense motion for a new trial.

## V.

■ Appellant now asserts on appeal that his "case falls squarely within the line of cases governing mutually exclusive guilty verdicts because it ... is a case where, if the jury found that [appellant] possessed a gun, that factual finding 'negatived' a finding that he took anything from Mr. Fernandez, while a factual finding that [appellant] took something from Mr. Fernandez 'negatived' a finding that he possessed a gun." He asserts "[b]ecause the

judge failed to properly instruct the jury to consider the two lesser-included offenses as *alternatives* of one another, the *two* guilty verdicts simply cannot stand."[5] (Emphasis added.) Appellant cites to *United States v. Daigle,* 149 F.Supp. 409, 414 (D.D.C.1957); *Fulton v. United States,* 45 App. D.C. 27, 41–42 (D.C.Cir.1916); *Davis v. United States,* 37 App. D.C. 126, 134 (D.C.Cir.1911); *Commonwealth v. Lowrey,* 158 Mass. 18, 32 N.E. 940 (1893), to support his argument.

Appellant further claims, "The inconsistent verdict rule presumes that courts have given the jury *proper legal instructions* and that the jury, after being given these proper instructions, reaches an inconsistent verdict because of lenity, mistake or compromise. Here, *the trial judge incorrectly instructed the jury,* permitting it to return a verdict that involved conflicting and irreconcilable versions of the facts, an entirely different scenario than that contemplated by the rule on inconsistent verdicts." (Emphasis added.)

The prosecution's response to appellant's contention is to cite the established rule set forth by the United States Supreme Court that "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.... That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." *Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (citations omitted). The prosecution maintains "[t]he more appellant tries to recast his claim as one of alternative offenses, the more it becomes clear that all he is saying

---

5. In addition to arguing that the judge misinstructed the jury, appellant also claims that once the verdict was rendered, the court should have *sua sponte* granted a new trial on

both offenses, or vacated one of the convictions. We do not address this argument because we conclude that the court did not err in instructing the jury.

is that the verdicts in this case were inconsistent as a matter of fact, which is an entirely different claim." The prosecution also points to *Fisher v. United States,* 749 A.2d 710, 714 (D.C.2000), a case in which this court held that inconsistent jury verdicts are permissible and must be allowed to stand.

 Rule 30 of the Superior Court Rules of Criminal Procedure provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Appellant did not object, either at the time the instructions were first proposed or after they were given, to the language that permitted the jurors to convict on *both* lesser-included offenses even if they acquitted the defendant of the greater offense. In the absence of a timely objection, a conviction may be reversed only for plain error. *Watts v. United States,* 362 A.2d 706, 708–09 (D.C.1976) (en banc). Plain error contemplates a "clear showing of a miscarriage of justice." *Hunter v. United States,* 606 A.2d 139, 141 (D.C.1992) (citation omitted). We conclude that appellant has made no such showing. Thus, not only did appellant *not* object to the instructions but appellant also objected to the prosecution's request for an instruction that would have clarified the relationship between armed robbery, robbery and ADW, thus inviting the error of which he now complains. Courts are especially reluctant to reverse for plain error when it is "invited." *United States v. Mangieri,* 224 U.S.App. D.C. 295, 305, 694 F.2d 1270, 1280 (1982) (citations omitted); *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993) (holding claim of error in failing to instruct jury on issue barred because defense counsel asked court not to instruct

jury on matter, noting that this court has "repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal") (citations omitted).

 Furthermore, appellant's claims of error are based on the assumption that robbery and ADW are alternative offenses. Appellant's argument that they are alternatives stems from what he sees as an inconsistent outcome given the evidence presented to the jury. Alternative offenses, however, only exist when the offenses are inconsistent with each other *as a matter of law. Fuller v. United States,* 132 U.S.App. D.C. 264, 288, 407 F.2d 1199, 1223 (1967) (en banc). Clearly, these charges are not. *Id.*

The record reflects that the judge instructed the jury in the manner that he did because of the witnesses' conflicting testimony regarding some of the crucial elements of the crimes charged. For example, Fernandez said to the jury that appellant used a gun whereas neither Zimmerman nor Ferguson really saw a gun. In addition, Ferguson thought that appellant was threatening Fernandez with his fist. Also, Fernandez testified that appellant took the $25 out of Fernandez's pocket while Detective Thompson testified that Fernandez told him that he had given the money to appellant in response to appellant pointing a gun at him. Given the witnesses' testimony, the jury could have rationally concluded that any of the following scenarios occurred: (1) appellant and Fernandez had a vigorous argument concerning the former's cars but nothing more occurred than angry words; (2) appellant, by dint of wielding a pistol, took by such force both money and a battery-booster from Fernandez; (3) appellant reached in the pocket of Fernandez's shirt and took money; (4) appellant's companion took the battery-booster from Fernandez's office with appellant's tacit approval

as a consequence of his "beef" with Fernandez; (5) appellant threatened Fernandez with his pistol; or (6) appellant threatened Fernandez only with his fist during their argument. Thus, while the trial court remarked it was "odd" that appellant could be found *not guilty* of robbery while armed yet found *guilty* of both robbery and ADW, we conclude that the evidence supported any or all of the offenses for which instructions were given, and therefore it was not plain error for the trial judge to have charged the jury in the manner that he did.

However inconsistent the verdict in this case is, we are precluded from second-guessing that verdict. "At least since 1932, the Supreme Court has made clear that courts are not to inquire into the thinking of a jury with respect to inconsistent verdicts in a single trial." *Fisher, supra*, 749 A.2d at 713. In *Dunn, supra*, 284 U.S. at 393–94, 52 S.Ct. 189, Mr. Justice Holmes, for the Court, explained the reason as follows:

> Consistency in the verdict is not necessary.... The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.... That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters. [Citations and internal quotation marks omitted.]

The Supreme Court has explained that the rule that courts do not question inconsistent verdicts "embodies a prudent acknowledgment of a number of factors." *Fisher*, 749 A.2d at 714 (quoting *United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). The Supreme Court enumerated in *Powell* such factors as the fact that what may be a mistake or a compromised acquittal on one offense is beyond the prosecution's ability to rectify by appeal because an individual assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberation that courts generally will not undertake. *Powell, supra*, 469 U.S. at 65–66, 105 S.Ct. 471. The Court in *Powell* also pointed out that with inconsistent verdicts, the defendant "is given the benefit of [his or] her acquittal on the counts on which [he or] she was acquitted, and it is neither irrational nor illogical to require [him or] her to accept the burden of conviction on the counts on which the jury convicted." *Id.* at 69, 105 S.Ct. 471.

We are satisfied that the trial court's instructions were supported by the evidence presented and did not constitute plain error.

Accordingly, the judgment of conviction must be, and is

*Affirmed.*