*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-CF-1303 and 12-CF-1409

ANTHONY RICHARDSON and JAMES WALKER,
APPELLANTS,

V.

UNITED STATES,
APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CF3-22507-11 and CF3-22508-11)

(Hon. J. Michael Ryan, Trial Judge)

(Argued October 29, 2014      Decided June 11, 2015)

*Cory L. Carlyle* for appellant Richardson.

*Mikel-Meredith Weidman*, Public Defender Service, with whom *James Klein*, Public Defender Service, was on the brief, for appellant Walker.

*Stephen F. Rickard*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time, and *Elizabeth Trosman* and *Lauren Dickie*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and PAN, *Associate Judge, Superior Court of the District of Columbia*.[*]

---

[*] Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

PAN, *Associate Judge*: Following a jury trial, appellants James Walker and Anthony Richardson were convicted of kidnapping while armed, felony threats, simple assault, unlawful entry, carrying a dangerous weapon (a knife), and various firearms offenses. On appeal, appellants challenge their kidnapping convictions, arguing that the evidence was insufficient because the conduct underlying the kidnappings was incidental to the offenses of robbery and assault.[1] Appellant Richardson also contends that (1) there was insufficient evidence to support his conviction for carrying a dangerous weapon ("CDW") and (2) his kidnapping conviction should merge with his simple-assault convictions. For the reasons that follow, we find appellants' arguments unpersuasive and affirm the judgments of the trial court.

## I.    Background

In the early morning hours of Sunday, November 20, 2011, Metropolitan Police Department officers went to 611 Florida Avenue, N.W., Washington, D.C., in response to a 911 call reporting a break-in at that residence. In a first-floor bedroom, the police found four people: Jazzmen Johnson, Silas O'Brien, and the

---

[1] Appellant Walker is the primary proponent of this argument on appeal. Appellant Richardson has adopted the argument.

two appellants. Mr. O'Brien was nude from the waist down and was bleeding from an injury to his ear; his hands were bound behind his back. At trial, the government advanced the theory that appellants had assaulted and attempted to rob Mr. O'Brien and Ms. Johnson; and that appellants had kidnapped the victims – both by detaining them in the bedroom against their will, and by forcing Mr. O'Brien to go into the house and into the bedroom.

Mr. O'Brien testified that on the evening of November 19, 2011, he attended a party at Howard University with his friends, the Thomas brothers. He then went to the Thomases' apartment on the second floor of 611 Florida Avenue, N.W. Shortly after arriving, Mr. O'Brien went outside to retrieve his jacket from the Thomases' car. After he got his jacket and turned to re-enter the house, Mr. O'Brien saw a man walking toward him on top of a fence near the home. Mr. O'Brien froze, and then saw another man pointing a gun at him. Mr. O'Brien grabbed the gun, and started struggling with the two men. One man struck Mr. O'Brien in the face, and the other struck him over the ear with the gun. The two men were later identified as appellants.

Appellants forced Mr. O'Brien to go into the house with them. Once inside, appellants asked Mr. O'Brien who else was in the house and who was upstairs.

Not wanting his friends to be surprised by the assailants, Mr. O'Brien fought appellants in the kitchen and dining room of the house. Appellants struck Mr. O'Brien multiple times, knocked him to the floor, and pulled off his pants and underwear. With his pants removed, Mr. O'Brien ceased struggling. Appellants used a zip tie to bind his hands behind his back. When the zip tie broke, appellants struck Mr. O'Brien in the head and bound his hands with another zip tie.

Appellants then brought Mr. O'Brien to the door of the bedroom nearest the kitchen, where they sat him against a wall. One of the appellants questioned Mr. O'Brien about who was in the bedroom and how many people were upstairs, while the other manipulated the door handle and tried to enter the bedroom. The bedroom belonged to Jazzmen Johnson, a chemical-engineering student at Howard University. She was in bed and awoke to the sound of voices and "tussling" in the hallway. When Ms. Johnson heard someone whisper, "Bust down the door," she called 911 to report a break-in. While Ms. Johnson was still on the phone with the police, appellants broke into her room and threw Mr. O'Brien onto the floor. Appellant Walker jumped onto the bed on top of Ms. Johnson and pointed a gun at her. He snatched the phone from her hands and ordered her to get out of bed and onto the floor. Appellant Walker pushed the gun against Ms. Johnson's neck as

appellants bound her hands behind her back with zip ties. Appellant Richardson turned on the lights and searched the room for valuables.

After a few minutes, a police officer, Gerald Anderson, arrived. Officer Anderson noticed blood on the door and wall outside of Ms. Johnson's bedroom, and a piece of a broken doorjamb and zip ties on the floor. He knocked on the door of the bedroom and identified himself as the police. Appellant Walker held a gun to Ms. Johnson's head and instructed her to tell the officer that everything was fine. She complied. Appellant Walker unbound Ms. Johnson's hands and got into bed with her. He told her to say that she was with her boyfriend; if she did not cooperate, he would cut her. Ms. Johnson complied. Officer Anderson continued to insist on speaking to Ms. Johnson face-to-face, but she refused to open the door, stating that she was not dressed, that she was in bed, and that she did not need to see the police. Officer Anderson persisted in knocking on the door and demanding that Ms. Johnson open it; Ms. Johnson, under pressure from appellants, continued to give false excuses as to why she could not come to the door. This standoff continued for eight to ten minutes.

Eventually, appellant Walker instructed Ms. Johnson to open the door, which she did. Ms. Johnson walked out of the room and whispered to the police,

"There are two men in my room that I don't know." The police entered the room and arrested appellants. The police also released Mr. O'Brien from his bindings. During a search incident to arrest, the police recovered a knife from appellant Walker's belt, and zip ties and a bloody glove from appellant Walker's pockets. The police found a loaded .25-caliber pistol outside, underneath Ms. Johnson's bedroom window.

In the defense case, appellant Walker presented a very different account of what had happened. Appellant Walker testified that he possessed zip ties that day because he worked at a moving company and had helped someone move electronics. He and appellant Richardson lived in the same house. On the day in question, they went to a club on U Street and then got some food. At about 5:15 a.m., they went to 611 Florida Avenue, N.W., to purchase marijuana from Mr. O'Brien.

Mr. O'Brien sold appellant Walker a half of an ounce of marijuana for fifty dollars. But appellant Walker was dissatisfied with the product, and asked for his money back. When Mr. O'Brien refused to return the money, appellant Walker and Mr. O'Brien engaged in a "fistfight." Appellant Richardson came to Walker's

aid. During the struggle, appellant Walker pulled out Mr. O'Brien's earring and pulled off Mr. O'Brien's pants in an attempt to recover his money.

According to appellant Walker, Mr. O'Brien then obtained a gun from a kitchen cabinet, and the three men struggled for the gun. The tussle moved through the hallway, bouncing from wall to wall, until the men burst into Ms. Johnson's bedroom. When the police knocked on the front door, Mr. O'Brien threw the gun out the window and told Ms. Johnson, "You know I have weed upstairs, so you got to make up a plan to get the police away." Ms. Johnson then spoke to the police through the door, of her own accord. Appellant Walker denied that either appellant searched Ms. Johnson's room for valuables, and denied ever using zip ties to bind the hands of Ms. Johnson or Mr. O'Brien.

Based on the foregoing evidence, the jury convicted appellant Walker of the following offenses: armed kidnapping and simple assault as to Mr. O'Brien; and armed kidnapping, felony threats, simple assault, and possession of a firearm during a crime of violence as to Ms. Johnson. The jury convicted appellant Richardson of unarmed kidnapping and simple assault as to Mr. O'Brien; and armed kidnapping, simple assault, and possession of a firearm during a crime of violence as to Ms. Johnson. Both appellants also were convicted of unlawful

entry, numerous firearms offenses, and carrying a dangerous weapon (a knife). The jury acquitted both appellants of burglary, destruction of property, assault with intent to rob while armed, assault with significant bodily injury, conspiracy to commit robbery, and related counts of possession of a firearm during a crime of violence. Appellant Walker was sentenced to an aggregate term of 236 months' imprisonment. Appellant Richardson was sentenced to an aggregate term of 139 months' imprisonment.

## II.     The Kidnapping Charges

On appeal, appellants argue that the evidence at trial was insufficient to support their convictions for kidnapping. Appellants urge this court to adopt what they call "the majority approach" to construing the elements of kidnapping, which would require the government to prove that the detention underlying the kidnapping was "prolonged" or for an "appreciable length of time," and not incidental to another offense. They argue that such an interpretation is necessary to prevent injustice because some offenses, such as rape and robbery, often necessarily include some period of detention, and it was not the intent of the legislature to allow the government to bring an additional charge of kidnapping where the detention is not distinct from another offense. In support of their

position, appellants rely on cases from other jurisdictions that have construed kidnapping statutes narrowly, in order to address the risk of severe sanctions being imposed for kidnapping based on "a broad and ill defined range of behavior, including relatively trivial types of restraint." *State v. Salamon*, 949 A.2d 1092, 1115 (Conn. 2007); *see also, e.g.*, *Government of the Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979) (interpreting Virgin Islands kidnapping statute); *People v. Levy*, 204 N.E.2d 842, 844-45 (N.Y. 1965).

Although appellants raise interesting issues of statutory interpretation, their argument is foreclosed by a binding precedent of this court. Moreover, the evidence in the instant case would be sufficient even under the standard that appellants propose. We therefore affirm appellants' kidnapping convictions and decline to address their statutory-interpretation arguments because consideration of those arguments is not necessary to resolve the cases on appeal. *See Koonce v. District of Columbia*, No. 13-CT-494, slip op. at 32 (D.C. Mar. 19, 2015) (McLeese, J., concurring in the judgment) (citing *United States v. Adams*, 740 F.3d 40, 43 (1st Cir. 2014) ("This prudential approach makes eminently good sense: . . . [d]iscretion is often the better part of valor, and courts should not rush to decide unsettled legal issues that can easily be avoided."); *Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377, 398 (Del. 2010) ("[I]t is unnecessary for this Court to decide

that issue, because a decision either way would not alter the result we have reached nor would a gratuitous statutory interpretation resolving this difficult issue be prudent.")).

Appellants assert that the kidnapping statute, D.C. Code § 22-2001 (2001), presents a "problem" because its broad language encompasses a wide range of conduct inherent in other crimes, such as assault, robbery, and rape. The kidnapping statute is, indeed, worded expansively. It provides:

> Whoever shall be guilty of, or of aiding or abetting in, seizing, confining, inveigling, enticing, decoying, kidnapping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining, or with the intent to hold or detain, such individual for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall, upon conviction thereof, be punished by imprisonment for not more than 30 years.

D.C. Code § 22-2001 (2001). The plain language of the statute contains no exception for cases in which the conduct underlying the kidnapping is momentary or incidental to another offense. Indeed, we have previously stated that "there is no requirement that the victim be moved any particular distance or held for any particular length of time to constitute a kidnapping; all that is required is a 'seizing,

confining' or the like and a 'holding or detaining' for ransom or reward 'or otherwise.'" *West v. United States*, 599 A.2d 788, 793 n.9 (D.C. 1991).

Nevertheless, this court has acknowledged the issue identified by appellants and previously addressed it by applying the doctrine of merger. In *(Thomas) Robinson v. United States*, 388 A.2d 1210 (D.C. 1978), a decision which has since been overruled, we considered whether the offense of kidnapping should merge with the offense of assault with intent to rape. In that case, the defendant had dragged the complaining witness across a street, into a park, and through some woods before pulling down her underpants. *Id.* at 1211. In holding that the offenses should merge, we noted that "some type of seizure, detention or confinement is an integral part of every rape," and that it is "unlikely that Congress intended that every person who commits a rape be also charged and convicted of [kidnapping], with its generally more severe penal consequences." *Id.* We applied a test of "whether the asportation (or seizure) in a given case was of the type incidental to every rape or whether the confinement and restraint were significant enough of themselves to warrant an independent prosecution for [kidnapping]." *Id.* at 1211-12 (citing *Levy*, 204 N.E.2d at 842). Moreover, we held that because the detention in *(Thomas) Robinson* was "momentary and coextensive in time and

place with the assault," it was "an integral element of the assault" and did not constitute a separate crime. *Id.* at 1212.[2]

The standard we applied in *(Thomas) Robinson* is substantially the same as the one advocated by appellants in the present appeal, albeit in a different legal framework (that of merger instead of sufficiency of evidence). But in *Byrd v. United States*, 598 A.2d 386 (D.C. 1991) (en banc), we overruled *(Thomas) Robinson* and various other cases that also employed a "factual analysis" to determine whether offenses should merge. *See Parker v. United States*, 692 A.2d 913, 916 (D.C. 1997) (confirming that merger analysis applied in *Robinson* was superseded by *Byrd*). We held in *Byrd* that merger should be governed by the "elements test" established in *Blockburger v. United States*, 284 U.S. 299 (1932),

---

[2] In the years following *(Thomas) Robinson*, we applied this fact-based merger inquiry in numerous other kidnapping cases. *See, e.g.*, *Sinclair v. United States*, 388 A.2d 1201, 1207-08 (D.C. 1978) (kidnapping conviction affirmed where victim was inveigled into an automobile at gunpoint and driven twenty-five blocks, because such confinement was not "approximately coextensive or a necessary incident to the crime of robbery"); *Beck v. United States*, 402 A.2d 418, 423 (D.C. 1979) (kidnapping conviction affirmed where defendant forced victim from the street into a nearby house at knifepoint before raping and robbing her); *Catlett v. United States*, 545 A.2d 1202, 1215-16 (D.C. 1988) (kidnapping conviction affirmed where victim "was forced from a busy intersection into an alley" and then "forced one hundred and sixty feet further into the alley" before robbery); *West v. United States*, 599 A.2d 788 (D.C. 1991) (kidnapping conviction affirmed where confinement lasted for more than fifteen minutes and extended "for a period of time following the [rape and robbery]").

which provides: "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Byrd*, 598 A.2d at 389 (quoting *Blockburger*, 284 U.S. at 304). The *Blockburger* test does not consider the facts of the case, but instead looks solely to the elements of the offenses of conviction. Under the elements test prescribed by *Blockburger*, kidnapping does not merge with robbery,[3] rape,[4] or assault.[5]

---

[3] *Compare* D.C. Code § 22-2001 (kidnapping), *with* D.C. Code § 22-2801 (2001) (robbery). *See also Hanna v. United States*, 666 A.2d 845, 855-56 (D.C. 1995) ("Kidnapping requires proof that the victim was seized or detained, which [robbery] does not. [Robbery] requires proof that property of value was taken, which kidnapping does not.").

[4] *Compare* D.C. Code § 22-2001 (kidnapping), *with* D.C. Code § 22-3002 (2001) (first-degree sexual abuse). *See also Bryant v. United States*, 849 A.2d 1093, 1108 (D.C. 2004) ("[D]etention is not an element of sexual abuse, and each offense has at least one element that the other does not have, thereby precluding merger.").

[5] *Compare* D.C. Code § 22-2001 (kidnapping), *with* D.C. Code § 22-404 (2001) (simple assault). *See also (Michael) Robinson v. United States*, 50 A.3d 508, 533 (D.C. 2012) (holding that assault and kidnapping charges do not merge "as they are not the 'same act' for purposes of *Blockburger* . . . and as each required proof of an element the other did not").

With merger foreclosed by *Byrd* and *Blockburger*, appellants essentially seek to resurrect *(Thomas) Robinson*'s "factual analysis" of kidnapping convictions by asking us to construe the kidnapping statute to encompass the *Robinson* test; appellants urge us to find the evidence insufficient to sustain a kidnapping conviction if that test is not met. As noted *supra*, support for this approach may be found in cases from other jurisdictions. *See, e.g.*, *State v. Brooks*, 56 A.3d 1245, 1265 (N.H. 2012); *Salamon*, 949 A.2d at 1092; *State v. Stouffer*, 721 A.2d 207, 215 (Md. 1998); *Berry*, 604 F.2d at 227; *Levy*, 204 N.E.2d at 842. But before relying on precedents that do not bind us, we must first look to our own case law. We believe that a binding precedent forecloses our adoption of appellants' approach.

We previously considered a claim that the offense of kidnapping should include an element of "non-incidental" confinement in *Hagins v. United States*, 639 A.2d 612, 617 (D.C. 1994). The defendant in *Hagins* was charged with both rape and kidnapping. He argued on appeal that the jury should have been instructed that it could not convict him of kidnapping "if the alleged 'confinement' was factually incidental to the sexual assaults." *Id.* at 617. We rejected that argument, noting that "[t]he jury's function is to apply the statutory elements of the crime to the facts at hand, and 'non-coextensive' (or 'non-incidental') confinement

under *Robinson* is not such an element." *Id.* Our holding in *Hagins* appears to foreclose reconsideration of this issue. Contrary to *Hagins*, appellants are asking us to construe the kidnapping statute to require an element of "non-incidental" confinement, and to find the evidence insufficient to support their convictions if that element is not met. We are bound by *Hagins*, for a panel of this court may not overrule a prior panel decision. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). We thus must reject the approach advocated by appellants.

Appellants suggest that our holding in *Hagins* is called into question by a footnote in *Parker*, 692 A.2d at 917 n.5. As noted *supra*, we confirmed in *Parker* that the *Blockburger* test should be applied instead of the *(Thomas) Robinson* test in determining whether a kidnapping conviction should merge. We stated in *Parker*, however, that "[a]ny lingering question that the same conduct does not support two separate offenses is properly framed as a challenge to the sufficiency of the evidence to prove each of the elements of the offense beyond a reasonable doubt." *Id.* This general statement, which is *dictum*, does not overrule or specifically address *Hagins*; nor is it inconsistent with the holding of *Hagins*. At most, it may reflect an erroneous assumption that the issue of evidentiary sufficiency in this context had not yet been addressed. We are unwilling to conclude that the footnote in *Parker* overrules a case that it does not even mention.

In any event, even if we were not bound by *Hagins* and were writing on a clean slate, this case is an inappropriate vehicle to consider adoption of the approach advocated by appellants. The evidence presented in this case supports appellants' convictions for kidnapping even under the new standard that appellants propose. Appellants were not charged with robbery, and were acquitted of assault with intent to commit robbery. Appellants thus fight an uphill battle in arguing that the detention of Mr. O'Brien or Ms. Johnson was incidental to either of those offenses, and that it would be unjust to allow the kidnapping convictions to stand. *Cf. Davis v. United States*, 613 A.2d 906, 913 (D.C. 1992) (even under *(Thomas) Robinson* test, "there is nothing to prohibit the government from charging both offenses, with the kidnapping charge surviving when there is an acquittal on the charge [that allegedly encompasses the kidnapping]."). On this record, appellants are forced to argue that the kidnappings were incidental to simple assault, the offense of conviction. The assaults on Mr. O'Brien and Ms. Johnson did not necessarily encompass or require moving Mr. O'Brien into the bedroom, binding both victims' wrists, and detaining the victims for 8-10 minutes. Thus, the detention of Mr. O'Brien and Ms. Johnson was not incidental to the assaults on those victims.

In sum, appellants' proposal is inconsistent with one of our own precedents, and appellants' convictions for kidnapping are supported by the evidence even under appellants' view of the statute. Accordingly, we decline to reverse appellants' kidnapping convictions.

### III. Appellant Richardson's CDW Conviction

Appellant Richardson argues that his conviction for CDW was not supported by sufficient evidence. He notes that the knife that is the subject of that charge was found in the possession of appellant Walker in a search incident to arrest, and that the knife was not displayed or used against Mr. O'Brien or Ms. Johnson. The government argues that the evidence was sufficient under a *Pinkerton* theory of co-conspirator liability. *See Pinkerton v. United States*, 328 U.S. 640 (1946).[6]

At the close of the evidence, the jury was instructed on both aiding-and-abetting liability, and co-conspirator liability under *Pinkerton.* With respect to the latter, the trial court instructed the jury as follows:

---

[6] The government and appellant Richardson dispute whether Richardson preserved this issue for appeal. We need not resolve this dispute because the outcome is the same under any standard of review.

> A defendant is responsible for an offense committed by another member of the conspiracy if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a natural consequence of the conspiracy.

Where a jury has been properly instructed on two alternate theories of liability for an offense, a conviction may be upheld if either of the two is supported by sufficient evidence. *See Gilliam v. United States*, 80 A.3d 192, 210 n.61 (D.C. 2013) (citing *Griffin v. United States*, 502 U.S. 46, 59 (1991)). Here, the government relies only on *Pinkerton* liability to defend appellant Richardson's CDW conviction.

"As articulated by this [C]ourt, 'the *Pinkerton* doctrine provides that a co-conspirator who does not directly commit a substantive offense may [nevertheless] be held liable for that offense if it was committed by another co-conspirator in furtherance of the conspiracy and was a reasonably foreseeable consequence of the conspiratorial agreement.'" *Wilson-Bey v. United States*, 903 A.2d 818, 840 (D.C. 2006) (en banc) (quoting *Gordon v. United States*, 783 A.2d 575, 582 (D.C. 2001)). "The government is not, however, required to establish that the co-

conspirator actually aided the perpetrator in the commission of the substantive crime, but only that the crime was committed in furtherance of the conspiracy." *Id.* A defendant's participation in a conspiracy must be established beyond a reasonable doubt before *Pinkerton* liability may attach. *See United States v. Sampol*, 636 F.2d 621, 676 (D.C. Cir. 1980) (citing *United States v. Michel*, 588 F.2d 986, 999 (5th Cir. 1979)).

Here, viewing the evidence in the light most favorable to the government, the evidence was sufficient under a straightforward application of *Pinkerton.* The jury could reasonably have found that a conspiracy existed, based on evidence that appellants arrived at the home together, and then worked in tandem to restrain, assault, and attempt to rob Mr. O'Brien and Ms. Johnson. *See, e.g.*, *Harrison v. United States*, 76 A.3d 826, 835 (D.C. 2013) (jury reasonably inferred existence of conspiracy where two defendants armed with guns accompanied third defendant to drug deal and then followed him back to vehicle); *Mitchell v. United States*, 985 A.2d 1125, 1135 (D.C. 2009) (jury reasonably inferred existence of conspiracy where defendants ran from the scene of the crime and got into a vehicle together).

Moreover, the evidence supports a finding that it was foreseeable that appellant Walker would possess a knife in furtherance of the conspiracy. The

evidence established that appellants were close to each other and lived in the same home; that they openly used another weapon (a gun) to commit the assaults and kidnappings; that appellant Walker threatened to "cut" Ms. Johnson while appellants were detaining her in the bedroom; and that appellants bound the victims' hands with zip ties, which presumably could be removed with a knife. *See United States v. Willis*, 899 F.2d 873, 875 (9th Cir. 1990) ("[W]here, as here, co-conspirators are few in number and know each other well, the court may infer that each participant knew the others' methods of operation."); *see also United States v. Smith*, 697 F.3d 625, 635 (7th Cir. 2012) (co-conspirator's possession of a weapon was reasonably foreseeable where co-conspirators planned bank robbery together); *United States v. Aduwo*, 64 F.3d 626, 630 (11th Cir. 1995) (co-conspirator's possession of a weapon was reasonably foreseeable where co-conspirators planned together to rob a drug dealer); *United States v. DeMasi*, 40 F.3d 1306, 1319-20 (1st Cir. 1994) (co-conspirator's possession of a weapon was reasonably foreseeable where co-conspirators planned together to rob a truck).

Appellant Richardson argues that *Pinkerton* liability is unsupportable in a case where, as here, the jury acquitted both appellants of a charged conspiracy to commit robbery. Appellant Richardson argues that *Pinkerton* liability requires a finding beyond a reasonable doubt that a conspiracy existed, but the jury in this

case clearly declined to make such a finding when it acquitted appellants of the conspiracy charge. Although appellant Richardson's argument seems logical at first blush, the apparent contradiction is, at most, an inconsistent verdict on the CDW and conspiracy counts. It is well established that "a not guilty verdict to one count of an indictment that is inconsistent with a guilty verdict to another count cannot invalidate the guilty verdict so long as the guilty verdict is based upon sufficient evidence." *Ransom v. United States*, 630 A.2d 170, 172 (D.C. 1993).[7] In reviewing appellant's conviction of CDW, we look at that count of conviction independently, as if it were in a separate indictment. *See United States v. Powell*, 469 U.S. 57, 62 (1984) ("Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."); *United States v. Martin*, 893 F.2d 1404, 1404 (D.C. Cir. 1990) ("[It is] settled law that the jury's verdict on each count stands alone and that inconsistent verdicts do not necessarily

_____

[7] *See also Hart v. United States*, 863 A.2d 866, 874 (D.C. 2004) ("It is now well-established that inconsistent verdicts by themselves do not mandate reversal.") (citing *United States v. Dobyns*, 679 A.2d 487, 490 (D.C. 1996)); *District of Columbia v. Tulin*, 994 A.2d 788, 798 (D.C. 2010) ("In criminal cases, inconsistent verdicts, while not favored, are generally allowed to stand."); *Evans v. United States*, 987 A.2d 1138, 1140 (D.C. 2010) ("Both the Supreme Court and this court have long tolerated inconsistent verdicts."); *McClain v. United States*, 871 A.2d 1185, 1193 (D.C. 2005) ("However inconsistent the verdict in this case is, we are precluded from second-guessing that verdict."); *Mayfield v. United States*, 659 A.2d 1249, 1255 (D.C. 1995) ("[J]ury verdicts will not be overturned for inconsistency.").

render a conviction infirm."). Thus, appellant Richardson's acquittal on the conspiracy count does not affect our conclusion, discussed *supra*, that the evidence was sufficient to support the CDW conviction under *Pinkerton*. "[T]here is no reason to vacate [appellant's] conviction [for CDW] merely because the verdicts cannot rationally be reconciled." *Powell*, 469 U.S. at 69.[8]

## IV. Conclusion

For the foregoing reasons, we affirm the judgments of conviction.

*So ordered.*

---

[8] Appellant Richardson also argues that his convictions for simple assault and kidnapping should merge under *Blockburger*, 284 U.S. at 299. As noted in footnote 5, *supra*, we held in *(Michael) Robinson*, 50 A.3d at 533, that assault and kidnapping charges do not merge "as they are not the 'same act' for purposes of *Blockburger* . . . as each required proof of an element the other did not." Kidnapping requires proof of asportation or confinement, while assault requires the actual or threatened infliction of injury. *See id.* Appellant Richardson's claim that every kidnapping necessarily encompasses an assault is unfounded. We agree with the government that numerous factual scenarios could support a conviction for kidnapping but not assault – *e.g.*, where a victim is locked in a room, or enticed into a stranger's car under false pretenses. We therefore reject appellant Richardson's argument, and affirm his convictions for simple assault.